WILSON, *Appellant*, v. THE ST. LOUIS & WESTERN RAILROAD COMPANY *et al.*

Division One, February 5, 1894.

1. **Corporation**: LIABILITY OF STOCKHOLDERS: LACHES.    Where in an action in equity, by an assignee of a judgment creditor of a corporation, against stockholders to enforce payment of stock issued to them, when the corporation was insolvent and in place of salaries due, it appears that the suit was not begun until seven years after the stock was issued and until four years after a practical dissolution of the corporation and sequestration of all its assets, the laches of the plaintiff will bar recovery on his part.

2. ———: ———: ASSIGNMENT OF JUDGMENT.    The assignee of the judgment must show in such suit that he paid a valuable consideration for its assignment.

3. Fraud, Right of Action for: ASSIGNMENT. A bare right to file a bill in equity for fraud practiced on the assignor is not assignable.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

J. R. Kinealy and M. Kinealy with whom is Adiel Sherwood for appellant.

(1) The acts claimed to have been done by the defendants Dodson, Owen and Diffenderfer—save the calling of meetings by Dodson—were acts within the scope of their duties as directors, and didn't entitle them to any compensation, save that provided by section 5, of the act of incorporation of the company, *i. e.,* one dollar and fifty cents per day, while the board is in session, and ten cents per mile from home to the place of meeting and return. *Cheeney v. Co.,* 68 Ill. 571; *Loan Association v. Steinmetz,* 29 Pa. St. 534; *Dunston v. Gas Co.,* 3 Barn. & Ad. 125; *Stacy v. Bank,* 4 Scam. (5 Ill.) 94; *Ogden v. Murray,* 39 N. Y. 202, 207; *Toponce v. Co.,* 24 Pac. Rep. 534; *Railroad v. Poor,* 59 Me. 277; *Gravel Road Co. v. Branegan,* 40 Ind. 361; Beach on Railroads, sec. 484. (2) Unless when, and to the amount, authorized by an express provision of the act of incorporation, a director can not receive any compensation for past services. *Bennett v. Car Roofing Co.,* 19 Mo. App. 349; *Loan Association v. Steinmetz,* 29 Pa. St. 534; *Gravel Road Co. v. Branegan,* 40 Ind. 361; *Dunston v. Gas Co.,* 3 Barn. and Ad. 125; *Barrill v. Co.,* 50 Hun, 257; *Toponce v. Co.,* 24 Pac. Rep. 534; *Gridley v. Railroad,* 71 Ill. 201. (3) And where the board have power to fix a salary, it must be done by resolution made of record before the services are

commenced. *Besch v. Mfg. Co.*, 36 Mo. App. 335.
(4) Although the act of incorporation of the Laclede
& Fort Scott Railroad Company provided that the
directors might fix the salary of the president or other
officers, yet they could not lawfully exercise that power
while the corporation remained insolvent, as that
company was in 1879 and 1881. *McAvity v. Co.*, 82
Me. 504. And this is so, even though it had been
satisfactorily proved that a salary had been voted for
Mitchell, or fixed in 1871, as he stated. *Ins. Co. v.
Crane*, 47 Mass. 64; *Co. v. Terrell*, 48 N. Y. 427. (5)
The action of the directors in voting any salary to
Dodson, even for future services, would have been
unlawful after 1871, or even before. *Ins. Co. v. Crane*,
6 Metc. 67; *Ferry Co. v. Terrell*, 48 N. Y. 427; *Davis
v. Railroad*, 22 Fed. Rep. 883. (6.) A majority of the
board of directors must be disinterested as to every
matter voted on. *Miner v. Ice Co.*, 93 Mich. 97. (7)
The directors can not issue stock below par. *Sturges v.
Stetson*, 1 Bliss, 246. (8) The notes given Owen,
Dodson and other directors, so far as given for past
services, were void. *Gravel Road Co. v. Branegan*, 40
Ind. 361; *Railroad v. Miles*, 52 Ill. 174. And if the
Dodson note be void, of course the Johnson judgment
got by Dodson's waiver of service is void. (9)
Directors and officers of a corporation are trustees for
the stockholders and creditors, and any arrangement
or agreement by which they secure advantages or
profits to themselves not expressly authorized by the
charter is void. *Railroad v. Poor*, 59 Me. 277; *Coal
Co. v. Parish*, 42 Md. 598; *Benson v. Heathorn*, 1 Younge
& C. Ch. 326; 38 Mo. App. 229; *Ryan v. Railroad*, 21
Kan. 365; *Ogden v. Murray*, 39 N. Y. 202; *Freeman v.
Stine*, 15 Phila. 37; *In Re Co.*, 2 L. R. Ch. Div. 1; *Miner
v. Ice Co.*, 93 Mich. 97. (10) The burden of proof
was on Dodson, Diffenderfer and Owen to show the

perfect fairness, adequacy and equity of their action in voting the stock on November 29, 1879, and June 20, 1881. *Coal Co. v. Parish*, 42 Md. 598. The burden of proof is on them also, because they were called on to give the particulars; the facts are within their own knowledge. *Davies v. U. S.*, 23 Ct. of Cl. 468; *Bank v. Railroad*, 77 Ga. 786; 1 Rice on Evidence (Civil), p. 117. And because they are trustees. *Sweeney v. Co.*, 30 W. Va. 443; *Dufford v. Smith*, 18 Atl. Rep. 1052. (11) The resolutions of November 29, 1879, and of June 20, 1881, so far as they provided that the stock issued to the president or to any of the directors should be deemed paid up in full, are void, and the par value of the stock so issued may be recovered. *Shickle v. Watts*, 94 Mo. 410; *McAvity v. Co.*, 82 Me. 504; *In Re Co.*, L. R. 10 Ch. Div. 597; *In re Co.*, L. R. 2 Ch. Div. 10; *Sturges v. Stetson*, 1 Bliss, 250, 253; Cook on Stockholders [2 Ed.], sec. 65, p. 754. (12) And in the following cases, in which several persons were involved (as in case at bar), the court lays down the rule always applied to a joint act of wrong-doing trustees that each and every person who aided, procured or voted for the passage of any of those resolutions, is liable for the par value of all the stock embraced in the resolution, no matter to whom allotted. *Freeman's Assignee v. Stine*, 15 Phila. 37; *In Re Ass'n.*, 51 L. T. Rep. Ch. Div., p. 286; *Metcalfe's Case*, L. R. 13 Ch. Div., 169. (13) The ordinary stockholders are liable in this action for the balance of the par value remaining unpaid on their stock, although they may have been promised by the officers of the company that fifty per cent. would be accepted in full payment. *Pickering v. Templeton*, 2 Mo. App. 424, and cases cited. The statute of limitations is no defense to any demand involved in this action. *Bank v. Bank*, 107 Mo. 133; Flint on Trusts and Trustees, secs. 316, 317, pp. 469, 470.

*J. B. Johnson* and *T. G. Rechow* for respondents.

(1) The statute of limitations applies; this is a creditor's bill; no call was necessary to maintain it and it could be brought at any time that insolvency existed. *Bank v. Bank,* 107 Mo. 133; *Savings Ass'n v. Kellog,* 52 Mo. 583; *Perry v. Turner,* 55 Mo. 418; Cook on Stock and Stockholders, sec. 225, subdiv. F; Field on Corporations, sec. 75; Thompson on Liability of Stockholders, sec. 34, subdiv. 4; *Coquard v. Pendergast,* 35 Mo. App. 237; *McGinnis v. Kortkamp,* 24 Mo. App. 378; *Goresne v. Lewis,* 15 Mo. App. 565. (2) These claims in equity are stale and the doctrine of laches applies and the bill should be dismissed on this ground. *Hopes v. Mfg. Co.,* 31 Am. St. Rep. 637; *Bliss v. Pritchard,* 67 Mo. 183; *Kline v. Vogel,* 90 Mo. 239; *Pike v. Martindale,* 91 Mo. 285; *Schradski v. Albright,* 93 Mo. 42; *Stamper v. Roberts,* 90 Mo. 683; *Laundrum v. Bank,* 63 Mo. 48; *Wells v. Perry,* 52 Mo. 576; *Kelly v. Hurt,* 74 Mo. 561; *Burgess v. Railroad,* 99 Mo. 496; *Oil Co. v. Marbury,* 91 U. S. 591. (3) The finding of the court should be affirmed on the merits; where charter provides that salary of president may be fixed by the board of directors and a president is elected and serves without any salary being named, the law raises an *assumpsit* on the part of the corporation to pay a reasonable compensation for his services rendered after his election, and he may recover without any action of the board. 2 Beach on Private Corporations, secs. 208, 209; 2 Wood's Railway Law, sec. 158, also sec. 429; *Rogers v. Co.,* 22 Me. 564; *Railroad v. Richards,* 8 Kan. 101; *Merrick v. Peru Co.,* 61 Ill. 472; *Grundy v. Pine Hill Co.,* 9 S. W. Rep. 414; *Bank v. Drake,* 44 Am. Rep. 646; *Railroad v. Tiernan,* 37 Kan. 606. This

is quite a similar case to one at bar. (4) Salaries allowed themselves by directors impeachable only for fraud, and this not presumed, but must be proved. *McNaughton v. Osgood*, 41 Kan. 109; *Kelsey v. Sargent*, 47 N. Y. 150. (5) Chief officers are not supposed or expected to keep an itemized account of their services. *Railroad v. Richards*, 8 Kan. 101; *Greely v. Bank*, 103 Mo. 222. (6) The "trust fund" doctrine has no application to this case. *Hopes v. Mf'g. Co.*, 31 Am. St. Rep. 637; *Clark v. Bever*, 31 Fed. Rep. 670. (7) The "trust fund doctrine" itself is denied by some courts, doubted by others, qualified by others, and has within the nature of things its own limitation. As this point has been elaborately presented to this court at this term in *Alburger v. Bank* we deem it unnecessary to repeat the discussion or authorities. (8) Directors may vote on their own claims and give themselves preference in the absence of actual fraud. *City of St. Louis v. Alexander*, 23 Mo. 483; *Foster v. Mullanphy*, 90 Mo. 79; *Kraft v. Craw*, 36 Mo. App. 288; *Warfield v. Marshal*, 2 Am. St. Rep. 263. (9) The railroad was not subject to garnishment in the *Keystone Building Co. case*, because the claim was for unliquidated damages. *Scackes v. Hotel Co.*, 37 Mo. 520; *Weil v. Tyler*, 40 Mo. 581; *Branson v. Hays*, 37 Mo. 450. (10) In case of judgment by default against a corporation, the stockholder may show when sued that the debt was not due by the corporation. *Irons v. Bank*, 36 Fed. Rep. 843.

MACFARLANE, J.—This is a suit in equity by plaintiff as a judgment creditor of the St. Louis and Western Railroad Company, to recover from certain stockholders therein, the par value of their stock which, it is alleged in the bill, was issued to and accepted by them, but for which they had never paid. The suit

was commenced on the seventeenth day of October, 1888, in the circuit court of St. Louis county. On the second day of February, 1891, the fourth amended petition was filed, upon which the case was eventually tried.

That petition charged that the Laclede and Ft. Scott Railroad Company was organized under an act of the general assembly of this state, approved January 11, 1860. That after said corporation had organized and commenced the transaction of business its name was changed to that of the St. Louis and Western Railroad Company. That said corporation was authorized to issue sixty thousand shares of stock of the par value each of $100. That there had been allotted to, and accepted by, defendant J. R. Owen, twenty-one shares; D. R. Diffenderfer, eighty-five shares, and to James N. B. Dodson, two hundred and eighty-eight shares and to other named defendants smaller numbers of shares. That no money was paid or consideration given, for said shares and that $100 is due on each. That said corporation on the third day of April, 1888, was wholly insolvent and without property or assets save the amounts due on said stock, and had wholly ceased to do business or to exercise its rights and franchises.

It charges further that on the fifteenth day of October, 1887, one Hugh Loonan recovered a judgment against said railroad company, in said court, for $152,213.19 which is still in full force and unpaid and that execution issued thereon was returned unsatisfied in December, 1887. That afterwards said judgment was assigned to plaintiff for a valuable consideration. That on the fifteenth day of January, 1889, one Lewis A. McGinnis, to the use of Mrs. Sarah J. Kinealy, recovered judgment against said railroad company for the sum of $13,260.45, which is in full force and

unpaid, and that an execution thereon was returned unsatisfied in February, 1889, which said judgment was, on the nineteenth of January, 1889, for a valuable consideration assigned to plaintiff, who is now the legal holder of both of said judgments.

Said above named defendants and others answered, setting up a number of special defenses. Among them the validity of said judgment was attacked. Both laches and the statutes of limitation, and the want of jurisdiction of the subject-matter of the suit and the persons of defendants, were pleaded. There was also a general denial and an averment that all said stock was fully paid.

On the trial it was shown that the charter authorized the construction of a railroad from Lebanon to Ft. Scott, Kansas, and that no organization for active work in the construction of the road, was commenced until 1869. The aboved named defendants were directors, Dodson being also president. It was expected to build the road by county subscriptions, which were obtained principally through the work and influence of said defendants. Work commenced in 1869, and was prosecuted on money received from the counties until about 1872, when it was suspended.. In 1881 there was a renewal of operations, but in about 1882 all work ceased and nothing was done after that time. On June 2, 1884, on the petition of certain creditors, the United States circuit court appointed a receiver for the corporation. An order to sell the property was made April 23, 1884, and a final decree and discharge of the receiver was made in 1888. The corporation from the time it commenced operations, was never solvent.

In November, 1879, the board of directors passed the following resolution:

"*Resolved*, That, for their services, salaries and money expended in and for the benefit of the Laclede

& Fort Scott Railroad Company, the following officers
and directors be allowed the following sums attached
to each of their respective names, to be paid in the
capital stock of the company: J. N. B. Dodson,
president, $25,000; Harrison Attaway, secretary,
$5,000; George W. O'Bannon, director, $4,000; John
Watson, director, $100; Waldo P. Johnson, retainer
fee, $3,000; T. G. Rechow, $500; and that stock be
issued to them, respectively, in full payment of the
same."

And again, on June 20, 1881, the board passed the
following resolution:

"*Resolved*, That, for services rendered and money
expended for this company, the president and secre-
tary are hereby directed to issue certificates of fully
paid up stock to the following persons for the number
of shares set opposite their names: D. F. Heppler,
twenty shares; D. R. Diffenderfer, seventy shares;
John Wayson, twenty-five shares; J. R. Owen, twenty
shares; Waldo P. Johnson, forty-five shares; J. N. B.
Dodson, thirty shares; George W. O'Bannon, twenty
shares; H. Attaway, twenty shares; Charles W. Blair,
fifteen shares."

The first contract was let to one Edward Burgess
and when the company suspended operations in 1872
it was largely indebted to him. Upon this indebted-
ness he recovered a judgment in the circuit court of
St. Louis county in 1874, for the sum of $86,450.89.
An execution on this judgment was returned unsatis-
fied in 1875. In May, 1875 Burgess assigned this judg-
ment to the Farmers' and Traders' Savings Institution,
as collateral to secure a debt of $3,000. Burgess tes-
tified that no part of this debt had yet been paid. On
the twelfth day of October, 1882, said institution
assigned the judgment to Hugh Loonan. The judg-
ment of Loonan, which was assigned to plaintiff, was

obtained upon this Burgess judgment. It does not appear what, if any, consideration was paid for either of these assignments.

In September, 1883, one Lewis A. McGinnis commenced a suit against the Keystone Building Company. Judgment was rendered in favor of plaintiff to the use of Sarah J. Kinealy, February 4, 1884. In 1888 the railroad company was summoned as garnishee upon an execution upon this judgment. On January 5, 1889, judgment was rendered against the company as garnishee for $13,260.45. This judgment was assigned to plaintiff January 17, 1889. It does not appear that any consideration was paid for these assignments.

In this statement I have assumed the validity of these judgments. Any other necessary facts will be stated in the opinion. The bill was dismissed and plaintiff appealed.

I.    The suit is to enforce a liability of defendants as stockholders of the corporation upon contracts which were entirely satisfactory to the parties to them. But this right is given, not only by the charter of the corporation, but by the law of the land.

The contracts of Burgess and the Keystone Building Company with the railroad company were for the construction of parts of the road, and provided that the work should be paid for, as it progressed, by the bonds of the counties which had undertaken to subscribe to the enterprise. The breaches of the contract consisted in the refusal of the counties to issue their bonds. These county subscriptions were afterwards held to have been illegal for the reason that the question of their issue was not submitted to a vote of the people of the county. *Wilson v. Polk County*, 112 Mo. 134, and cases cited.

At no time from the organization of the company, until its final dissolution was it solvent, or did its stock

have any market value. There can be no doubt that the defendants, to whom the stock was issued, under the resolutions of November, 1879, and June, 1881, had performed services and expended money in discharge of their duties as directors and officers. The charter provided that the directors should each receive $1.50 per day for attendance on the meetings of the board and ten cents per mile each way in going to and returning from such meetings and that the board should fix the salaries of the president and other officers and agents. The salary of the president was fixed by the board at $3,000 per year, and defendant Dodson acted as president for a number of years and performed valuable services in securing county subscriptions. When the stock was issued to defendants there can be no doubt it was worth much less than the value of the services rendered. The stock was taken, as appeared from the evidence, in order to relieve the corporation from paying for these services and expenditures, in money, which was all required in order to keep the enterprise on foot. These defendants were willing to risk the future success of the enterprise for their compensation. The stock was evidently issued in the best of faith and without the semblance of a fraudulent intent.

The cause of action in favor of Burgess accrued in 1872, seven years before the first issue of stock and nine years before the second; that of the Keystone Building Company some time previous to September, 1883, at which time McGinnis commenced his suit against that company. From the nature of the contracts of Burgess and the Keystone Building Company with the railroad company, it is further evident that neither of these contractors relied upon the unissued and unallotted stock of the company as a fund from which they were to be paid. The stock had no value,

it was understood that the road was to be built from bonds of the counties, and these contractors agreed to accept such bonds in payment for their work. The issue of the stock then, though done for less than its par value, did not affect the credit of the company or operate as a fraud upon the contractors.

The right to maintain this suit and recover any unpaid balance on this stock does not depend upon equitable rights, but upon principles of public policy, and the letter of the constitution and the statute. *Shickle v. Watts*, 94 Mo. 414, and cases cited. Plaintiff asks the enforcement of his supposed rights in a court of equity. His right to invoke equity must be measured by the standards fixed by the principles of equity. His application must be timely in all the circumstances; and he must come with clean hands. We do not think he has met either of these requirements.

The corporation was insolvent when the last shares of stock were issued in June, 1881. The Burgess judgment had been standing unsatisfied since 1875. This suit was not commenced until October, 1888. In the mean time the property of the railroad had been once sold under execution. A receiver had been appointed, demands allowed, the property sold, and the affairs of the corporation settled. In 1884 the corporation was absolutely insolvent, had entirely ceased to do business or exercise its powers and franchises and "for all essential purposes was as effectually dissolved as if a solemn judgment of court had been pronounced to that effect." *Savings Ass'n v. Kellogg*, 52 Mo. 590; *Moore v. Whitcomb*, 48 Mo. 543; *Shickle v. Watts*, *supra*. Under these decisions the judgment creditors had the right to proceed at law against the stockholders in 1884.

But little more can be said for the McGinnis judgment against the Keystone Building Company. It was rendered in 1884, and not until 1888 was the rail-

road company garnished. During this four years not one step appears to have been taken to make the railroad company respond as a debtor of said building company, though it was practically dissolved, in fact, as well as by the limitation contained in its charter, that the road should be complete within fifteen years. Plaintiff only incorporated the McGinnis judgment, in this suit, on filing the fourth amended petition, in 1891. So it appears that this suit was not commenced until seven years after the last stock was issued, four years after a practical dissolution of the corporation, and after the sequestration of all of its assets under the orders and decrees of the United States circuit court.

In view of the absence of all natural equity in the claim of plaintiff, and all the circumstances of the case, we think the laches of plaintiff fatal to his action. *Burgess v. Railroad*, 99 Mo. 508, and cases cited; *Mackall v. Casilear*, 137 U. S. 556.

II. We think also that the circumstances show that the assignment of these judgments was without other consideration than that plaintiff would prosecute this action. The Burgess judgment, which amounted to $152,000 when revived, stood from May, 1875, to October, 1882, as collateral security for $3,000. It was then assigned to Hugh Loonan, in whose name it was revived in December, 1887. The judgment was assigned to plaintiff in a few days after the return of an execution thereon, and immediately thereafter this suit was commenced. It does not appear, except from a statement in the petition, that any valuable consideration was paid.

The same may be said of the McGinnis judgment. As soon as it was obtained it was also transferred to plaintiff, so far as was shown, without consideration, and was at once included in an amended petition in this case. We are satisfied that this whole proceeding

is a mere speculation on the liability of these defend-
ants, as stockholders of said corporation, and that
plaintiff is a mere volunteer without substantial or
equitable right. It was the duty of plaintiff to have
shown his good faith, if he was so acting when it was
discredited by so many circumstances.

Courts of equity will not lend their aid to assist in
the enforcement of legal rights acquired in such a
manner. As it has been said: "It has always been
held that the assignment of a bare right to file a bill in
equity for fraud upon the assignor is void, as against
public policy, and savoring of the character of main-
tenance." *Smith v. Harris* 43 Mo. 562, and cases
cited. "An assignment which violates the policy of
the law against champerty and maintenance, as operat-
ing merely to procure or promote litigation, will not
be permitted by a court of equity, even though it may
not amount strictly to the criminal offense of cham-
perty or maintenance." 3 Pomeroy's Eq. Jurispru-
dence [2 Ed.], sec. 1276.

In a recent case in the supreme court of Minnesota
in which the assignee of judgment creditors was seek-
ing to recover similar liabilities from the stockholders,
the court says: "Under such circumstances, it was
incumbent upon the thresher company (the complain-
ant) to show its own equities, and that it was in a
position to demand such relief. It was not the original
creditor of the car company, but the assignee of the
original creditors. By that purchase it, of course,
succeeded to whatever strictly legal rights its assignors
had; but it is not rights of that kind which it is here
seeking to enforce. Under such circumstances, we
think it was incumbent upon it to state what it paid
for the claims, or at least to show that it paid a sub-
stantial, and not a mere nominal, consideration." And
again the court says, after stating that the purchase

had been made after the insolvency of the company, and after it was in the hands of a receiver: "If any person or company had gone to work and bought up for a mere song this large indebtedness of the car company ·for the purpose of speculating on the liability of the stockholders, no court would grant them the relief here prayed for." *Hospes v. Mfg. Co.*, 48 Minn. 174.

In the case of *Wilson v. Polk County*, 112 Mo. 134, the same plaintiff, as assignee of said judgments, was seeking to enforce a claim against said county upon unpaid stock in the same corporation. The court held that the facts which gave plaintiff a standing in a court of equity should have been stated. Such facts were neither stated in the petition nor found on the trial in this case; indeed the evidence convinces us that the basis of plaintiff's claim is a most unconscionable speculation on the possible successful termination of a law suit. A court of equity should not lend its aid in the matter. Judgment affirmed.

### SEPARATE OPINION.

BARCLAY, J. *(concurring).*—This case was brought into the supreme court by filing a certified copy of the judgment, and of the order granting the appeal, as permitted by section 2253, Revised Statutes, 1889. The record before us for review (supplementing those copies) consists of the abstracts which have been submitted (as allowed by that section), in conformity to the rules of court. No full transcript of the proceedings in the cause of the circuit is filed here. Our only information as to the contents of the record in the trial court is furnished by the printed abstracts.

The following is the exact language of the plaintiff's abstract, bearing on the point of practice raised, viz.:

"The plaintiff filed a motion for a new trial on the grounds of the admission of incompetent and irrelevant evidence against plaintiff's objection, the exclusion of competent and relevant evidence offered by the plaintiff, that the findings and decree were against the law and the evidence, and the weight of evidence, and the law under the evidence, and should have been for the plaintiff as to all the defendants for amounts asked.

"The motion was overruled; plaintiff excepted, filed his bill of exceptions and appealed from the judgment to this court."

On the part of some of the defendants it is insisted that these recitals are insufficient to warrant a review of the alleged errors at the trial; because, *first*, it does not appear that the motion for new trial was filed within four court days after the finding or verdict; *second*, the dates when the motion was overruled, and when the bill of exceptions was filed, are not given; nor does it appear, in any way, that the bill was filed in season, or that the appeal was taken at the same term at which the motion was overruled.

It is a well established principle of procedure in this state that the action of the trial court is to be presumed correct until the contrary is made clearly to appear. Hence it has been held that the record here should disclose that the motion for new trial and bill of exceptions were respectively filed within the periods of time prescribed by law.

The record before this court ought to furnish those necessary facts, with some reasonable certainty, in order to bring the reviewing power of the court to bear upon the merits of the litigation as disclosed at the trial.

There are repeated rulings of this court to that effect, with reference to full transcripts of the record. The printed abstracts, used as substitutes for such tran-

scripts under section 2253, should make a like showing.

We can not properly dispense with the require-
ments which the law-making power has prescribed, and
which a long line of decisions of the court emphasizes.

In my judgment the objections interposed on
these grounds to our consideration of the merits of the
controversy are well taken.    Hence my concurrence in
the conclusion reached without any investigation, on
my part, of the topics treated in the opinion of my
learned brother MACFARLANE.