HAYWARD, Assignee of AETNA LOAN COM-
PANY, and S. I. HASELTINE, Trustee, v.
SMITH, BUTTS, ROBERTSON et al., Appel-
lants.

**Division One, March 15, 1905.**

1. **SECOND APPEAL: Law of Case: Equitable Relief.** Where on
a former appeal this court prescribed the conditions under
which a suit in equity could be maintained, and on a retrial
plaintiffs by an amended petition conformed their case to those
requirements and the facts are the same, the former holding
becomes the law of the case.

2. **FRAUD: Right of Defrauded: Clean Hands.** One who buys real
estate subject to an existing incumbrance, that may be fraudu-
lent as to creditors of certain persons, which incumbrance is
subsequently released by a quit-claim deed signed and delivered
by mistake or fraud, cannot interpose a defense of unclean
hands against a subsequent purchaser of the note secured by
the incumbrance, who sues to set aside the release and rein-
state the incumbrance, said purchaser being one of the creditors
defrauded by the making of the incumbrance and who purchased
the same to vindicate an independent, pre-existing right in
the real estate and who was not *in pari delicto* with the wrong-
doers.

Appeal from Greene Circuit Court.—*Hon. T. J. De-
laney,* Special Judge.

AFFIRMED.

*A. F. Butts* for appellants.

(1)   A petition in equity to set aside a release of
part of the property included in a deed of trust, re-
leased by mistake, which fails to show that the remain-
ing property is insufficient to secure the balance still
due on the note, is fatally defective.   Haseltine v.
Smith, 154 Mo. 413.   (2)   To have a deed of release
set aside the party giving the deed must show that he
has suffered an injury.   Henderson v. Dickey, 35 Mo.

120; Rue v. Meers, 43 N. J. Eq. 377. (3) A plaintiff must come into a court of equity with clean hands. (4) A note tainted with fraud can not be purged therefrom by sale to a party knowing all about the fraudulent nature of the note. (5) A person can not rely on two antagonistic titles. He must rely on one or the other. (6) Where co-conspirators are engaged in a fraudulent scheme to defraud whomsoever they can, and for the purpose of carrying out said scheme one of said conspirators takes a note and deed of trust on several pieces of property to secure the same, and through a mistake releases one of these pieces of property from the lien of this deed of trust, equity will not interfere in his behalf to set aside this release, and his assignee with full knowledge of the facts stands in no better situation. (7) The merits of this case are considered *de novo* in the Supreme Court. Lins v. Lenhardt, 127 Mo. 280; Blount v. Spratt, 113 Mo. 48; Campbell v. Hoff, 129 Mo. 317. (8) A naked right to bring a suit in equity can not be assigned. 1 Am. and Eng. Ency. Law (1 Ed.), 833; Smith v. Harris, 43 Mo. 562; Wilson v. Railroad, 120 Mo. 58; Pomeroy Eq. Jur. (2 Ed.), sec. 1276.

*Tatlow & Mitchell* for respondents.

It is well settled in this State that the general rule is that when a case has been decided in this court and again comes here on appeal, or by writ of error, only such questions will be noticed as were not determined in the previous decision. Whatever was passed upon on the first appeal will be deemed as *res adjudicata,* and no longer open for dispute or further controversy. Overall v. Ellis, 38 Mo. 209; Bank v. Taylor, 26 Mo. 340; Keith v. Keith, 97 Mo. 231; Gwin v. Wagoner, 116 Mo. 151; Hickman v. Lane, 116 Mo. 123; Chapman v. Railroad, 146 Mo. 494; Baker v. Railroad,

147 Mo. 140; May v. Crawford, 150 Mo. 504; Carey v. West, 165 Mo. 455. There can be no pretense that the case at bar falls within any of the exceptions ever recognized by this or any other court. It is a plain attempt of the appellants in this case to obtain a rehearing of the former appeal as of right without any excuse whatever, and without suggesting any point that they did not suggest on the former appeal, and which was not considered and determined on that appeal.

LAMM, J.—The Aetna Loan Company was an incorporated building and loan association, and after the commencement of this suit made a general assignment to Hayward.

S. I. Haseltine is the trustee in a deed of trust securing to L. A. Haseltine on real estate in Crescent addition to the city of Springfield, Missouri, a note executed by one Rooker, for sixteen thousand dollars, reduced by credits to about $4,000 and assigned to the Aetna Loan Company. Among the parcels of land covered by said trust deed is lot 28 in Crescent addition.

Hayward, as such assignee, and S. I. Haseltine, as such trustee, prosecute this suit to cancel a quitclaim deed made by L. A. Haseltine to the defendant, Samuel P. Smith, prior to the assignment of said note, releasing said deed of trust as to said lot 28; and further seek to set aside certain conveyances of lot 28 made to defendants Butts and Robertson subsequent to the release, to the end that the deed of trust be restored to life and vigor as a paramount and valid record lien.

Here once before under a somewhat different caption (see 154 Mo. 404) the cause was sent back with the law of the case settled on the then record, but with no adjudication of the facts, and with leave to plaintiffs to file an amended bill to bring their case within the views of this court on the law.

When the cause went below defendants took a change of venue, a special judge was selected, an

amended bill was filed to meet the views of this court expressed in the former appeal, to which Hayward as assignee was made a party plaintiff; issue was joined by answer and reply, and on second trial the same result was reached as in the first, viz., a decree for plaintiffs, from which defendants again appeal.

On the bill as it stood on the first appeal the plaintiffs sought, on a mere assignment of the Rooker note, to strike back at a prior release of lot 28 from the deed of trust securing it and to cancel the release for fraud, mistake and non-delivery. In this condition this court, following recognized doctrines, held that the bare right to maintain a suit in equity for relief against fraud, already accomplished, against an assignor, was not assignable. This court held further that as the original bill was not framed on the theory that the relief sought in canceling the release was to vindicate any independent right of the loan company in lot 28 existing prior to the assignment of the note to it, it was bad on demurrer, since it did not appear that other property covered by the deed of trust was not ample to prevent injury to the Aetna Loan Company as the mere owner of the alleged secured paper. But having the eye of a court of conscience, on the facts disclosed by the record then before it, this court did not order the bill dismissed. To the contrary it pointed out the exception to the general rule, thus: "If the assignee has an interest in the thing independent of the assignor and the fraudulent act lies in the way of the assignee's attainment of his independent right, he may acquire the assignor's right to sue, to remove the obstacle, and a court of equity will entertain it." It was because of this exception to the rule (which exception precisely fitted the facts then before the court) that the court further said in effect on the former appeal that the loan company had, before its purchase of the secured note, an independent right in lot 28 which needed vindication, and that the loan company could buy the mort-

gage note and use it to clear its title to lot 28; the trouble being that the bill as it stood at the first trial, *nisi*, mentioned this independent right only incidentally and by way of narrative as a fact in the history of the quitclaim deed attacked, but did not plead such independent right as a constitutive element in the cause of action and predicated no relief on the existence of such independent right.

When the plaintiffs filed their amended bill they responded with warmth and intelligent alacrity to the gracious and suggestive leave to amend given by this court. The bill as amended is a voluminous pleading, and in most of its essential features and allegations is the same as the bill before this court on the former appeal and in the former opinion sufficiently set forth. It added, however, allegations which, condensed to their substance and effect, set forth that the Aetna Loan Company bought the mortgage note in question from L. A. Haseltine and he sold it to the loan company at the instance of its beneficial owners, his two brothers, for the very purpose of protecting an existing independent right then held by the loan company in lot 28. The origin and character of this independent right, having once been gathered from the record and fully spread in the printed reports of this court, need not be again stated, since the former and this opinion must be read together, and since the finding of facts hereinafter set forth gives all needed light.

To this amended bill the defendants filed a joint amended answer consisting of admissions, denials and affirmative matter. The scope of the new matter pleaded was, in broad outlines, to the legal effect that the Rooker note assigned by L. A. Haseltine to the loan company, was a mere incident in an alleged elaborate scheme of the Haseltines to defraud their creditors, was without consideration, that the loan company, purchasing it with full knowledge of its sinister character and all the ramifying details of the fraud, had thereby

ratified the fraud and, hence, came into court with unclean hands.

The findings of fact and conclusions of law based thereon by the learned special judge, Hon. Thomas J. Delaney, are so full and satisfactory that they are incorporated herein, as follows:

"The court finds from the evidence that on the 17th day of October, 1891, S. A. and S. C. Haseltine were the owners in fee of lot 28 in Crescent addition (the lot in controversy) and other property; that on that day a judgment for $100 was rendered against said Haseltines in favor of the Real Estate Investment Company; that said cause was appealed to the St Louis Court of Appeals and was pending therein on September 30, 1892. On the last-named day said Haseltines by deed containing the usual covenants of warranty conveyed said lot to one C. H. Hall for the stated consideration of $3,800, and on the same day said Hall executed and delivered a deed of trust on same property for $1,900 in favor of said Haseltines; said warranty deed was recorded January 3, 1893, and said deed of trust was recorded January 27, 1893. After the execution of said warranty deed and before its record, and after the execution of said deed of trust and before its record, S. A. Haseltine, who was making a number of loans for the Aetna company, procured a loan from the Aetna company for said Hall on said lot 28, and to secure said loan, said Hall executed and delivered two deeds of trust as follows: One for $1,500, due — years after date, dated the — day of ——, 1893, to the St. Louis Trust Company, trustee for the Aetna Loan Company, which was duly recorded January 21, 1893; one for $892, dated the — day of ——, 1893, due —, to Phillips, trustee for the Aetna Loan Company, which was duly recorded January 21, 1893, so that both of these deeds of trust, while executed after the execution of the deed of trust in favor of the Haseltines, was recorded before, and the court finds that the Aetna

company had no knowledge or notice of the Haseltines' deed of trust. The court further finds that to procure the loan from the Aetna Loan Company to Hall, the Haseltines furnished an abstract of title, and the abstract so furnished failed to disclose the existence of the judgment lien in favor of the Real Estate Investment Company against them. The fact stands admitted by the pleading that the withholding of the existence of the judgment lien from the abstract was intentionally done by the Haseltines. The court further finds that at a sale duly advertised under the Hall deed of trust in favor of the Haseltines, one T. B. Brown became the purchaser of this lot on the — day of —— and by quitclaim conveyed the same to one J. W. Hamilton, who in turn conveyed the same by quitclaim to J. B. Harlow, trustee for the Aetna Loan Company, on March 6, 1895, who in turn on June 22, 1895, conveyed the same by quitclaim deed to the Aetna Loan Company. The court further finds that the St. Louis Court of Appeals reversed the judgment of the circuit court of Greene county in the case of the Real Estate Investment Company v. the Haseltines, but certified the case to the Supreme Court of Missouri, and afterwards, by agreement of the parties, the appeal was dismissed and the judgment of the circuit court affirmed, leaving the judgment of the circuit court in force, the lien of which was superior, as stated, to all the deeds hereinbefore mentioned. The court further finds that S. A. and S. C. Haseltine then conceived the intention of controlling said judgment and execution thereon and of selling all their property under the same, and in the furtherance of this intention, the court finds that they either paid Mr. McCammon, the attorney for the Real Estate Investment Company, the full amount of the judgment before the sale thereunder, or arranged to pay the same to the satisfaction of said McCammon, but the court is unable to say whether or not the actual assignment of the judgment to Mrs.

Clark, who is a sister of the Haseltines, was before or after the execution sale. The court further finds that said Haseltines then arranged to have their brother, L. A. Haseltine, buy in all property levied upon to satisfy said judgment, and the court finds that the Haseltines controlled the execution, designated the property to be sold and that the lot in question and about all other, if not all in fact, of the property of said S. A. and S. C. Haseltine, was sold under this execution, which issued and was levied on October 15, 1894, and bought in on the 20th day of November, 1894, for the sum of $24.50, and after paying the costs there remained the sum of $3.50 to be credited on the judgment, which still remains unsatisfied. The court can not, from the evidence, believe that this manipulation was for the purpose of protecting the outstanding warranties of the said Haseltines in the property so sold, for while there is no evidence before the court of other indebtedness against the said Haseltines which would induce them to resort to these methods, yet the absence of such evidence coupled with the fact that they immediately transferred to L. A. Haseltine about $6,000 worth of other property and securities to induce him to release to the loan company and others interested, convinces me that some purpose other than the mere one of protecting their warranties actuated them. Else why permit sale to cloud title and then give $6,000 to remove it when the payment of the $100 judgment would accomplish this end? The court further finds that the Aetna Loan Company had no knowledge or notice of these transactions until the same were accomplished facts. The court further finds that on the — day of — — when the Aetna Loan Company acquired the title of Hall that passed by the sale under the deed of trust made by Hall in favor of S. A. and S. C. Haseltine, the two notes were owned by the Aetna Loan Company and there was due thereon at the time about $2,000. The court further finds that after the purchase

by L. A. Haseltine, he, on January 2, 1895, conveyed lot 28 and other property to one William Rooker for the stated consideration of $16,000, but the court finds that no payment whatever was made, but that Rooker executed and delivered a deed of trust on the same property on the same day in favor of L. A. Haseltine to secure the payment of a note for $16,000 due three years after date. The court further finds that after this last-named transaction the Aetna Loan Company, through B. U. Massey, Esq., its attorney, for the first time discovered the true condition of the title, and it was then agreed by and between the Haseltines and Mr. Massey, that the Haseltines would procure a quitclaim deed from Rooker and also a quitclaim deed from L. A. Haseltine and thus perfect the title in the Aetna Loan Company for the sum of $60, which it was estimated would be the cost of a foreclosure. But before this arrangement could be consummated, the court finds from the evidence that on the 11th day of September, 1895, the defendant, S. P. Smith, without any examination of the record whatever, paid Rooker the sum of $25 as purchase price and Rooker thereupon by warranty deed conveyed said lot 28 to said Smith, subject, however, to the $16,000 deed of trust, which fact is so stated in the deed, and thereupon Smith entered into possession of said lot. The court, however, finds from the evidence of Mr. Massey, which was not contradicted by Mr. Smith, that Smith must have had some knowledge of the existence of a claim of some character in behalf of the Aetna Loan Company, because he asked Mr. Massey if the company would sell to him, but whether this was before his purchase from Rooker or afterwards the evidence does not disclose. The court further finds that Mr. Haseltine became cognizant of the purchase by Smith and tried to purchase the title of Smith in order to carry out the arrangement he, Haseltine, had made with Massey. The court further finds that the Haseltines authorized J. T. White, as their

agent, to procure from L. A. Haseltine a quitclaim to said lot 28 in favor of the Aetna Loan Company on the payment of $60 by said company; the court further finds that Mr. Haseltine declined to sell or have his brother sell to Smith, but was willing to buy Smith's title and told Smith if he was willing to sell to go to J. T. White, and any arrangement he made with White would be satisfactory. The court finds that White's authority was limited to procure a quitclaim for the Aetna Loan Company only, or to buy the title of Smith, and that he, White, had no authority to sell to Smith, and that Smith knew of this limitation of authority. The court further finds that no misrepresentations were made by Smith to White to induce White to procure quitclaim for him, Smith, but that White innocently overstepped his authority, and that Smith knew at the time he (White) was exceeding his authority, and that the deed from L. A. Haseltine to S. P. Smith was executed, and the manual act of delivery took place under these circumstances. The court further finds that to raise the sum of $60 which Smith was to pay White for the quitclaim deed, Smith executed the deed of trust in favor of Butts for $500, which was to be negotiated. This plan, however, failed, and Butts then to secure said $60 executed and delivered to White his two notes, one for $50, and one for $10, secured by a paid up leasehold interest. The court further finds that when the Haseltines learned of the execution of the quitclaim deed to Smith, they promptly repudiated the transaction and denied the authority of White, who as promptly acknowledged that he exceeded his authority, and tendered to Butts the securities he had taken, and Butts accepted the same, and during the pendency of this suit hypothecated same for his own use and fully enjoyed the leasehold interest. The court further finds that thereupon the Aetna Loan Company filed its bill in equity against said Smith & Butts, complaining of the facts hereinbefore recited, and joined the Hasel-

tines as parties defendants, and alleged a conspiracy amongst all of them to cheat and defraud plaintiff. The court finds that pending said suit, an arrangement was made between the Aetna Loan Company and the Haseltines, whereby the said L. A. Haseltine assigned the said $16,000 note to the Aetna Loan Company, and the said suit was dismissed, and the present suit instituted. The court finds that at the time of said judgment, said $16,000 note had not matured, and there was due thereon about the sum of $4,000, and same was assigned to said Aetna Loan Company for a valuable consideration and that the express purpose of said assignment was to protect the title claimed by said Aetna Company in the lot in controversy, and that at the time of said assignment said loan company had knowledge of the transactions hereinbefore detailed. The court further finds that the said sum still remains due on said note, and that said note duly passed to the possession and control of plaintiff, Hayward, who was duly qualified as assignee of the Aetna Loan Company, and that said Hayward is now the owner of said note. The court further finds that the deed of trust executed by Smith to Robertson in favor of defendant Butts, has been released and the note therein described cancelled, and that Butts acquired the title of Smith in said lot pending this litigation and with full knowledge of this transaction. The court further finds that at the time Smith bought from Rooker the lot 28 was reasonably worth $1,000. Upon this evidence the court finds as a matter of law: 1st, that the deed of L. A. Haseltine to S. P. Smith was not in law delivered; 2d, that Smith having acquired his title to the lot in question, expressly recognizing the $16,000 mortgage and buying the land subject to it, can not question the good faith of that transaction, as the fraudulent nature or purpose, if any such existed, was not a fraud upon him, but was directed against the Aetna Loan Company; 3d, that the assignment of the $16,000 note by L. A.

Haseltine to the loan company was not an assignment of a mere right to sue in equity, and therefore void, but was an assignment to protect a subsisting and valid right; 4th, that even if the sheriff's sale to L. A. Haseltine, the deed of L. A. Haseltine to Rooker, and the deed of trust from Rooker back to Haseltine, were parts of a fraudulent transaction, the loan company was no party to the fraud, but the fraud, if any in fact, operated against it, and it has a right to avail itself of the fruits of such transaction in self-defense, without being subjected to the charge of coming into equity with unclean hands, and inasmuch as defendant does not claim a marshalling of assets, and offers no evidence to sustain a plea for the same, the judgment of the court therefore is, that the deed from L. A. Haseltine to S. P. Smith, and the deed from Smith to A. F. Butts, be cancelled and for naught held, and that said mort-gage of Rooker to L. A. Haseltine be declared a first lien on said lot 28, Crescent addition to the city of Springfield, Missouri.''

And it was accordingly so decreed.

An examination of the record satisfies us that the foregoing finding of facts is based on the evidence and should be deferred to. We are satisfied furthermore that the probative force of the evidence at the last trial is the same as that introduced at the former trial and contained in the former record.

The controlling contention of appellants is that respondents do not come into a court of equity with clean hands, but this contention is unavailing; for it was in the case before and disallowed. VALLIANT, J., speaking for this court, said: "Thus, if the plaintiff loan company, in order to clear its title derived from Hall, had seen fit to buy the mortgage note held by the Haseltines instead of attacking its validity and had planted itself in court on the Hall title, and had attacked the quit-

claim deed from Haseltine to Smith on the ground that it was the unauthorized act of an agent and that Smith knew it and Butts had notice of it, the court under this evidence would have been justified in granting the relief prayed.'' This amounts to a direct adjudication that the loan company had the right to buy the note and use it and its shadow, the deed of trust, for equitable relief. It becomes thus the law of the case *on the same facts,* as here, and we will not allow the question of the sanitary condition of respondents' hands to be reopened and reagitated. [May v. Crawford, 150 Mo. l. c. 524; Carey v. West, 165 Mo. 455, and cases cited.] Moreover, appellants are not creditors of the Haseltines. They were not injured by any fraud of theirs. Rooker took lot 28 *cum onere.* So did Smith. Butts took pending litigation and with notice. The loan company was not *in pari delicto* with any wrongdoers and no good reason is seen in law or ethics why it might not possess itself of a weapon, which may have been originally forged for its own undoing, and resharpen it for legitimate use under the supervision and eye of a chancellor.

Judgment affirmed. All concur.