**ALADDIN HOTEL CO. v. BLOOM.**

No. 14645.

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1953.

628

J. M. Fisher, Kansas City, Mo. (Larence C. Schrader, Kansas City, Mo., on the brief), for appellant.

Terence M. O'Brien, Kansas City, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

As originally brought this was in form a class action in which Josephine Loeb Bloom as plaintiff sought for herself and other minority bondholders of the Aladdin Hotel Company similarly situated equitable relief. She named as defendants Aladdin Hotel Company, a corporation, Charles O. Jones, Inez M. Jones, Charles R. Jones, Kathryn Dorothea Jones, Barbara Ann Jones and Mississippi Valley Trust Company, a corporation. She alleged that the class whom she purported to represent consisted of approximately 130 members who were the owners of a minority in value of certain bonds issued by the Aladdin Hotel Company, and that the object of the action was to obtain an adjudication of claims which affected specific property involved in the action and that common questions of law and fact affecting the rights of the parties constituting the class were involved; that on September 1, 1938, the Aladdin Hotel Company executed and delivered a series of 647 bonds aggregating in principal amount the sum of $250,000.00. The bonds on their face were made payable September 1, 1948, with interest to that date at 5 per cent per annum payable only out of net earnings and with interest at the rate of 8 per cent per annum from maturity until paid; that the Hotel Company to secure payment of said bond issue executed its deed of trust by which it mortgaged certain real estate owned by it in Kansas City, Missouri; that the mortgage also covered furnishings and fixtures in the hotel property owned by the Aladdin Hotel Company; that the Mississippi Valley Trust Company was named as trustee in said deed of trust; that the bonds and deed of trust contained provision empowering the bondholders of not less than two-thirds principal amount of the bonds, by agreement with the Hotel Company to modify and extend the date of payment of said bonds provided such extension affected all bonds alike. She then alleged that she was the owner of some of said bonds of the total principal amount of $3500; that the defendants, other than the Hotel Company and the Mississippi Valley Trust Company, were all members of the so-called Jones family and during the period from May 1, 1948 to the time of the commencement of this action they were the owners of a majority of the stock of the Hotel Company and controlling members of its Board of Directors and dominated and controlled all acts and policies of the Hotel Company; that they were also the owners and holders of more than two-thirds of the principal amount of said bonds, being the owners of more than 72 per cent thereof; that they entered into an agreement with the Hotel Company June 1, 1948 to extend the maturity date of said bonds from September 1, 1948 to September 1, 1958. It was also alleged that other changes were similarly made, on various dates, in the provisions of the trust deed but as the trial court deemed them immaterial we pretermit reciting them here in detail. It was alleged that the defendant Mississippi Valley Trust Company certified the modifications as provided in the trust deed; that the purported changes were made on application of the Hotel Company and with the consent of the holders of two-thirds in principal value of the outstanding bonds; that no notice of said application for change in the due date of the bonds was given to the mortgage bondholders and that plaintiff did not consent nor agree to the modification. She then alleged that the modifications were invalid because not made in good faith and were not for the equal benefit of all bondholders but were made

corruptly for the benefit of the defendants and such modification deprived plaintiff and the other mortgage bondholders of their rights and property; that said modification extended for ten additional years the powers and compensation of the Mississippi Valley Trust Company as trustee; that the Mississippi Valley Trust Company is made defendant because it is a party to the aforesaid modifications and waivers and participated in effecting them and because it benefitted by aforesaid modifications, waivers and certifications. Other allegations as to grounds of invalidity had reference to certain other modifications which the court held immaterial and they are therefore not here recited. Plaintiff prayed for a declaratory judgment declaring and holding that the purported modifications, waivers and certifications are illegal, inequitable and void; that she and all other bondholders of the defendant Aladdin Hotel Company have judgment against defendant Aladdin Hotel Company for the principal amount of the bonds held by each of them with interest thereon at 8 per cent per annum (allowing said defendant credit thereon, however, for the 5 per cent per annum interest paid thereon) from September 1, 1948 until the payment of such principal and interest.

On trial the court dismissed as to all individual defendants, including the Mississippi Valley Trust Company, and made findings that the amendments benefitted the Hotel Company and the Joneses but did not benefit the bondholders; that all bondholders were entitled to notice of any proposed amendments; that the Joneses acting as the Hotel Company's officers and as majority bondholders, had a legal duty to exercise an honest discretion in extending the bonds; that the power to postpone the maturity date of the bonds could not be legally recognized in the majority bondholders under the facts of this case; that the decree, however, should be limited to a money judgment because that would grant plaintiff full relief. The court refused to enter a declaratory judgment which might affect the rights of others not parties to the action and it exonerated the Mississippi Valley Trust Company from all charges of conspiracy or bad faith. No judgment was entered against any of the defendants save and except the Hotel Company. The judgment was a money judgment for the amount due on plaintiff's bonds.

In seeking reversal the Hotel Company in substance contends: (1) that the modification of the provisions of the trust deed extending the time of maturity of the bonds was effected in strict compliance with the provisions of the contract of the parties and hence was binding on all the bondholders; (2) that whatever right of action resulted from the alleged unlawful acts of the parties to the contract vested in the plaintiff's grantors, and being an equitable right as alleged by plaintiff, was not transferred to her by assignment of the bonds which she owns; (3) that if the acts of the parties to the contract in effecting such modification were not in the first instance authorized they were subsequently ratified by the plaintiff and her assignors; (4) that if a cause of action resulted from the acts of the parties to the contract it could be prosecuted only by the Mississippi Valley Trust Company, named as trustee in the trust deed.

The trust deed contained provision that,

"In the event the Company shall propose any change, modification, alteration or extension of the bonds issued hereunder or of this Indenture, such change, if approved by the holders of not less than two-thirds in face amount of the bonds at the time outstanding, shall be binding and effective upon all of the holders of the then outstanding bonds, provided, however, that such modification, change, alteration or extension shall affect all of the outstanding bonds similarly."

The bonds, including those held by plaintiff, contained the following:

"The terms of this bond or of the Indenture securing the same may be modified, extended, changed or altered by agreement between the Company and the holders of two-thirds or more in face amount of bonds of this issue at the time outstanding. Any default under the Indenture may be waived by

the holders of two-thirds or more in face amount of the bonds at the time outstanding."

The bonds also contained the following provision:

"For a more particular description of the covenants of the Company as well as a description of the mortgaged property, of the nature and extent of the security, of the rights of the holders of the bonds and of the terms and conditions upon which the bonds are issued and secured, reference is made to said General Mortgage Deed of Trust."

It appears without dispute that the modification here under consideration was made in strict compliance with the provisions contained in the trust deed and by reference embodied in the bonds. The Hotel Company made the application to the trustee and it was approved by the holders of more than two-thirds in face amount of the bonds at the time outstanding. When this application for modification was made to the trustee he was guided in his action by the terms of the contract between the parties. That contract made no provision for notice. It required that such application have the approval of those holding two-thirds or more in face value of the bonds. The only other limitation contained in the contract with reference to the power to modify its terms was to the effect that "such modification, change, alteration or extension shall affect all of the outstanding bonds similarly." The modification did affect all outstanding *bonds* similarly and it is important, we think, to observe that the contract does not require that such modification affect all *bondholders* similarly. What effect this change might have on various bondholders might depend upon various circumstances and conditions with which the trustee was not required to concern itself. The so-called Joneses were the controlling stockholders of the Hotel Company and were its officers and the court found that the alteration was advantageous to the Hotel Company. It was doubtless effected primarily to benefit the financial standing and operating efficiency of the hotel. It does not follow, however, that such

modification was prejudicial to the bondholders. Their security was greatly improved in value by the management and it is inconceivable that the Joneses should deliberately act to the prejudice or detriment of the bondholders when they held and owned some 72 per cent of the entire outstanding bond issue. It is urged that because the Joneses were acting in a dual capacity they became trustees for the other bondholders and that as such it was incumbent upon them to do no act detrimental to the rights of the bondholders. The rights of the bondholders, however, are to be determined by their contract and courts will not make or remake a contract merely because one of the parties thereto may become dissatisfied with its provisions, but if legal will interpret and enforce it. Monticello Bldg. Corp. v. Monticello Inv. Co., 330 Mo. 1128, 52 S.W.2d 545; Minneapolis-Moline Co. v. Chicago M. St. P. & P. R. Co., 8 Cir., 199 F.2d 725. There is no question that the provision in the trust deed and bonds was a legal provision which violated no principle of public policy nor private right. The sole ground for holding the modification extending the time for payment void is that no notice was given the minority bondholders. If the Joneses had not been acting in a dual capacity, then, we assume, the modification, effected as it was with the approval of the holders of two-thirds of the face value of the outstanding bonds, would have been held good. It is conceded that under such circumstances no notice would have been necessary. We think the situation must be viewed realistically. No notice was required so far as the parties to the contract were concerned. Their rights must be determined by their contract and not by any equitable doctrine, and notice to the other bondholders could have served no possible purpose. Litigants have no standing in a court of equity where a remedy at law is available. The holders of more than two-thirds of the face value of the bonds could not have been prevented from approving the proposed change even had notice been given and the acts of the parties must be determined in relation to the terms of their contract. It follows that no prejudice could have been suffered by plain-

tiff or her grantors by the fact that notice of the proposed change or modification was not given them.

We have searched the record with great care and find no substantial evidence warranting a finding of bad faith, fraud, corruption or conspiracy of the Joneses. When Charles O. Jones became manager of the hotel properties in 1944 no interest had been paid on the bonds prior to that date. The Hotel Company paid the interest to all bondholders in 1944 and the interest has been paid each year since. Numerous improvements were made in the hotel property at an expense of over $300,000. At the time the Joneses took over the management in 1944 the Company had a deficit of $70,-000 and a balance due of $24,000 on the first mortgage of $50,000, all of which has been paid off, and the gross income of the hotel has increased from $219,000 in 1944 to $600,000 in 1951, and the book value of the stock has increased from $384,000 in 1944 to $916,000 in 1951. The properties covered by the trust deed were at the time of the trial of the proximate value of $1,000,000.

It appears without dispute that the changes made in the provisions of the trust deed were made before plaintiff acquired her bonds. The bonds on their face were past due when she purchased them. Her predecessors in title were given notice by the trustee that changes had been made in the provisions of the instrument and at its request the bonds were returned to it and it thereupon endorsed thereon the following legend:

"The maturity of this bond has been extended to September 1, 1958, and the requirements of deposit of sinking fund payments and the filing of reports and audits with the trustee by the obligor have been cancelled by agreement dated June 1, 1948, between the obligor and the holders of more than two-thirds of the face value of the then outstanding bonds, as evidenced by a certificate of extention by the trustee on July 2, 1948, and duly reported as is required in the mortgage deed of trust."

They also knew that they had not had notice of the application to modify the provisions of the trust deed. If any equities in favor of the bondholders were infringed by reason of the modifications of the provision of the trust deed relative to the due date of the bonds it occurred while these bonds were owned and in possession of plaintiff's grantors and if any equitable right of action accrued it accrued to them and not to plaintiff. It is, however, urged that plaintiff, by securing an assignment of the bonds, also acquired whatever equitable right of action had vested in her assignors.

The applicable law, this being a diversity of citizenship case, is that of the State of Missouri. In Monticello Building Corp. v. Monticello Investment Co., supra [330 Mo. 1128, 52 S.W.2d 552], the Supreme Court of Missouri had before it the question of what rights or causes of action were secured by the plaintiff by a mere assignment of a legal right. In the course of the opinion the court among other things said:

"* * * before intervener here can invoke a court of equity, it behooves him to show his own good faith and the equities of his own position. One may purchase a cause of action at law and enforce all legal rights which go with it, but the right to appeal to the conscience of a court of equity cannot be bought or sold. (Citing cases.)"

In Haseltine v. Smith, 154 Mo. 404, 55 S.W. 633, 635, the Supreme Court of Missouri again had occasion to pass on this question. In that case an assignee sought to have set aside a deed as an encumbrance on the property securing the plaintiff's loan. In the course of the opinion the court among other things said:

"* * * but standing, as the plaintiff loan company does in this record, in the shoes of L. A. Haseltine, or not even in as favorable position as he stood, but rather as the mere assignee of his right to sue in equity to redress a wrong perpetrated on him, its position is not so favorable. * * * But, conceding that he could have maintained such a suit, he could not assign his right to do so. The bare right to maintain a suit in equity to set aside a deed obtained from the assignor by

fraud is not assignable. (Citing cases.)"

In Harrison v. Craven, 188 Mo. 590, 87 S.W. 962, 964, it is said:

"It is contended by appellant that this settlement and release were fraudulent products, resulting from a breach of a fiduciary relation existing between respondent and said heirs in relation to the matter of collecting and accounting for rents, and should be brushed away. Allowing this contention force, yet, as there was no paper issue tendered relating to such fraud, an issue of fraud was not properly in the case, and hence the proofs on that score need no attention on appeal. Not only so, but such fraud, if existent, was no legal concern of appellant. It came well within the maxim 'res inter alios acta,' and the question is controlled by elementary law to that effect that a cause of action based on fraud against an assignor is not assignable—2 Story's Equity (13th Ed.) § 1040g; 3 Pomeroy's Equity (2d Ed.) § 1276; Jones v. Babcock, 15 Mo. App. 149; Wilson v. [S. Louis & W.] R. R., 120 Mo. 45, 25 S.W. 527, 759; Haseltine v. Smith, 154 Mo. 404, 55 S.W. 633; Hayward v. Smith, 187 Mo. 464, 86 S.W. 183—and, therefore, appellant could not acquire by purchase the right to set the fraudulent release aside."

In Weissenfels v. Cable, 208 Mo. 515, 106 S.W. 1028, 1033, the Supreme Court of Missouri among other things said:

" * * * the right of action on the fraud is not a vendible commodity to pass from one to another by dicker and sale. The right to sue to set aside that deed was in Boone, remained in him (if anywhere), and did not pass by his subsequent special warranty to plaintiff. (Citing cases.)"

The same principle is announced in Wilson v. St. L. & W. R. Co., 120 Mo. 45, 25 S.W. 527, 759 and Ryan v. Miller, 120 Mo. 45, 139 S.W. 128.

Plaintiff by her suit sought equitable remedies for alleged acts affecting the rights of her assignors. We think she did not, by securing an assignment of these bonds, secure the right to maintain such a suit.

As has been previously observed, plaintiff's assignors were given notice of the change made in the deed of trust and they knew the method by which such change could be effected. They were charged with the knowledge of the provisions of the deed of trust and of the recitals in their bonds. They also knew that they had not had notice of the application made for such modification. They not only did not repudiate the action taken but they acquiesced therein by sending in their bonds so that the change might be noted thereon. After receiving the bonds with the legend stamped thereon, showing specifically what change had been made, they still did not repudiate the action taken nor protest with reference thereto. In addition to this they received interest payable only under the provisions of the bond and deed of trust as changed. The plaintiff likewise, with notice of the change made, and with knowledge that she had had no notice of the application for such change, made no effort to repudiate it until she brought this suit, but accepted interest payable under the provisions of the contract and bond as thus changed. She has retained the interest thus paid her.

If the Joneses as holders of the majority of the outstanding bonds became under the circumstances trustees for all bondholders, then in consenting to the change they were acting as agents for all bondholders. It is a well established principle of agency that ratification of an alleged unauthorized act by the agent may be expressed as spoken or written words, or it may be implied from any act, words or course of conduct on the part of the principal which reasonably tend to show an intention on his part to ratify the unauthorized acts or transactions of the alleged agent. Restatement, Agency, Sec. 93. The parties, effecting this change in the contract were agents of plaintiff's assignors and their actions and the actions of the plaintiff subsequent to knowledge of the acts of their agent, and with knowledge that they had not had notice of such proposed change, we think clearly established ratification. The

court separated these acts instead of considering them all together, holding that plaintiff's acceptance of the bonds with the endorsement thereon "standing alone" did not effect a ratification, and the court overlooked the vital fact that plaintiff's grantors knew that they had not been given notice of the application to make the change complained of. The court also held that acceptance of the interest payments "standing alone" did not indicate a ratification. But the course of conduct of plaintiff and her assignors can not thus be divided up into segments but must be considered in its entirety and when so considered is entirely inconsistent with the thought that either plaintiff's assignors or plaintiff repudiated the acts of their agents in effecting the change in the provisions of the deed of trust. It is clear that the altered contract was not void but voidable only, and plaintiff's assignors, with knowledge that the change was made without notice to them, made no protest but acquiesced therein, the unequivocal acts showing that they treated the altered contract as their own. The acts of plaintiff's assignors were such as to ratify the change complained of and plaintiff was bound by that ratification.

It remains to consider the contention that plaintiff in her individual capacity could not maintain this action. The deed of trust provides that,

"No holder of any bond hereby secured shall have any right to institute any suit or other action hereunder unless the Trustee shall refuse to proceed within thirty (30) days after written request thereto of the holders of not less than twenty per cent (20%) in face value of the bonds then outstanding and after tender to it of indemnity satisfactory to the Trustee."

More than 20 per cent of the bonds were in the hands of the minority bondholders but no written request was made upon the trustee to bring this suit. The court has held that the trustee at all times acted in good faith and no reason appears why he was not requested to bring this suit. Plaintiff is the owner of only $3500 face value of a bond issue of $250,000. According to her complaint there are 130 other minority bondholders and if she can maintain this action individually then the defendant may be subjected to 130 other similar lawsuits. As stated by this court in Central States Life Ins. Co. v. Koplar, 80 F.2d 754, 758:

"The reason for the rule is not far to seek. If in a mortgage securing thousands of bonds every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable."

See, also: Carson v. Long-Bell Lbr. Co., 8 Cir., 73 F.2d 397; Monticello Bldg. Corp. v. Monticello Invest. Co., supra; Muren v. Southern Coal & Mining Co., 177 Mo.App. 600, 160 S.W. 835.

We think plaintiff could not maintain this action in her individual capacity without first having complied with the provisions of the deed of trust which vests in the trustee the right to maintain such an action.

The judgment appealed from is therefore reversed and the cause is remanded to the trial court with directions to dismiss plaintiff's complaint.