## THE STATE v. MILLER, *Appellant.*

1. **Ex Parte Allen, ante p. 534, affirmed.**

2. **Accomplice:** AIDING AND ABETTING MURDER. An instruction that if defendant was present aiding, abetting and assisting another in resisting arrest by an officer of the law, or in the killing of the officer which ensued, or was present ready to render such assistance as might be necessary, he was guilty of murder in the first degree, is not objectionable as holding defendant responsible for the act of the other without proof of any prior or present agreement or combination between them; especially when taken in connection with another instruction to the effect that the jury should acquit unless defendant was willfully, deliberately, premeditatedly, on purpose and of his malice aforethought present at the killing, and aiding, abetting, comforting and assisting in it.

3. **Instructions** are properly refused when they are but repetitions of others already given, or ignore evidence in the case, or announce abstract propositions of law having reference to no facts in evidence.

4. **Practice, Criminal:** CONTINUANCE: CONTRADICTION OF ABSENT WITNESS. The act of February 17th, 1875, (Acts 1875, p. 104,) applies to criminal cases, and permits the State to show that an absent witness has made a statement conflicting with one which has been read to the jury by the defense, under an agreement with the prosecuting attorney, made, as permitted by the act, to avoid a continuance, that it should be received and read as the testimony which the witness, if present, would give.

5. **A Verdict** against the defendant on an indictment consisting of several counts, all of which charge the crime of murder in the first degree, is good without specifying the count on which the jury find him guilty.

6. **Practice, Criminal:** INDICTMENT IN SEVERAL COUNTS: ELECTION. When one count of an indictment charges that defendant jointly with another shot and killed a third person, and other counts charge him with being present aiding and abetting the other in the killing, the State will not be compelled to elect on which count she will go to trial.

*Appeal from Lafayette Criminal Court.*—The case was tried before WILLIAM WALKER, Esq., sitting as temporary or special judge.

*B. L. Woodson* and *J. N. Southern* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—At the February term, 1877, of the criminal court of Jackson county the defendant and one Richard Green were jointly indicted for the murder of Henry H. Hughes. Green was tried in the Jackson criminal court and convicted, and has expiated his crime on the gallows. Miller was tried at the March term, 1878, of the criminal court of the sixth judicial circuit, held at Lexington, in Lafayette county, to which a change of venue was awarded. Hon. H. H. Hill, judge of that court, being absent and unable to be present, an election was held under the act of March 19th, 1877, regular in all respects, if said act apply to that criminal circuit, and William Walker, Esq., was elected to preside during that term, and presided at the trial of Miller. The important question growing out of the election of the Special Judge has been considered and

1. EX PARTE ALLEN, decided at this term in the case of *Ex parte*
ANTE P. 534, AF-
FIRMED.            *Allen, ante* p. 534, and it is not necessary to notice it here. The facts of the case, as testified by William Fisher for the State, are that H. H. Hughes, who was deputy marshal of Jackson county, Missouri, had a warrant for the arrest of Green and Miller for an assault upon one Henry Mensing, with intent to kill. Green, Miller, Winn, and Gilchrist were chopping wood in Jackson county for witness Fisher, and occupied a double cabin in the timber. On Saturday evening, February 10th, 1877, Hughes went to the residence of Fisher and got Fisher to accompany him to the cabin. They reached the cabin between seven and eight o'clock, and the four wood-choppers were sitting playing cards by firelight, on a box. Fisher entered first, followed by Hughes. As Fisher went into the cabin he saw Miller put his right hand on the handle of a pistol on his right side, but whether

putting it in or taking it out could not say.   Green got up and stepped back in the corner near the fireplace. Gilchrist passed out by Hughes, and Miller remained sitting.   Hughes walked to near the end of the box; the parties were playing cards; looked at the boys and said to Miller, "Is your name Frank Miller?"  Miller said it was. Hughes then remarked to him that he had a warrant for him and Richard Green.  He then looked at Winn, who was standing in a corner of the cabin, and said he believed he was the man he wanted.   Winn told his name, and Fisher then, pointing to Green, told Hughes that he was the man. Hughes said, " Yes, he is the man." Hughes had his right hand in his right overcoat pocket, and took the warrant from his left pocket with his left hand, and read it. Before he finished reading it, Green, stooping as he did it, gave the end of the box a kick with his right foot.   Hughes returned the paper to his pocket and said to Miller, "I understand you have a pistol; please give it to me."   Miller neither said nor did anything.   Just then Green said to Hughes, " You get out of here, and be d—d quick about it," and immediately fired a pistol at Hughes, and almost at the same moment another shot was fired, but by whom witness could not state.   Green immediately fired again; Hughes fell out of the door.   As Fisher started to lift Hughes up, Miller held a pistol in both hands and presented it at Fisher, saying, "Hold, hold, Will; don't you interfere."   When Hughes fell outside, Green went out over him, Fisher followed and Miller next, and again presented his pistol at Fisher and told him not to interfere.   Miller then called out to Green, who had gone into the woods, " O wait; where are you?"   Green answered, and he and Miller went off together.   This was substantially the evidence of Fisher.   Gilchrist testified that he saw no pistol on Miller's person; thought he would have seen it if the handle had been exposed to view.   Winn's testimony was that Miller did not have a pistol in his hand until after Green fired twice, and that Hughes, he thought, fired one

of the three shots that were fired, and that Miller did not rise to his feet until the shooting was all over; that Miller had no pistol on his person when Fisher and Hughes came into the cabin. Green and Miller came from Kansas to Jackson county together. Miller worked about two years for an uncle of Green in Iowa, and in the fall of 1876 went to Topeka, Kansas, where he first met Green. From there they came to Kansas City, just before Christmas, 1876, and were together until the murder of Hughes, after which both fled together and together were arrested.

There were instructions given for the State as to what constituted aiding and abetting one in the perpetration of 2. ACCOMPLICE: a crime, and the others were identical with aiding and abetting murder. those given in the Green case, which this court held to be correct declarations of law. See the case reported 66 Mo. 631. On the subject of abetting and aiding, the court instructed the jury, for the State, that if defendant was present aiding, abetting and assisting Green in resisting said arrest, or in perpetrating said killing, or was present ready to render such assistance as might be necessary, he was guilty of murder in the first degree. Defendant's counsel insist that the principle underlying the instructions for the State is that Miller is criminally responsible for Green's acts, although no prior or present agreement or combination between them was shown. We do not think that they bear any such construction, and the third given for defendant declared that the jury should acquit Miller unless he was willfully, deliberately, premeditatedly, on purpose and of his malice aforethought present at the killing, and aiding, abetting, comforting and assisting Green in killing Hughes.

The substance of the second and fourth instructions, asked by defendant and refused, was contained in his third. 3. INSTRUCTIONS. The fifth was properly refused, because there was some evidence of a previous understanding between Green and Miller to resist an arrest. It was circumstantial evidence, but it was for the jury to determine its

weight and significance. The seventh was rightly refused, because it was a mere abstract proposition of law. If the jury had been instructed as therein asked, that defendant and Green had a right to be together and engage in wood-chopping or any other lawful business, and were lawfully together in the wood-chopper's cabin, and were entitled to the protection of the law in their personal liberty until restrained thereof by due process of law, it could have had no possible bearing on the case. There was no evidence that any one was endeavoring illegally to restrain them of their liberty. So of the ninth instruction; there were no facts in evidence to justify the court in giving it. All the evidence proved an active resistance of the officers by Green, and the court explicitly instructed the jury to acquit Miller unless he was actively aiding and assisting. The eighth instruction was but a repetition of those which had been given.

Before the trial commenced defendant applied for a continuance and filed his affidavit, stating the absence of 4. PRACTICE, CRIMINAL: continuance: contradiction of absent witness. Zac. Winn, who had been summoned as a witness in his behalf, and what facts he would testify to if present. The prosecuting attorney then admitted that, if present, Winn would so testify. Thereupon the court overruled the motion and ordered the trial to proceed. After defendant closed his evidence, having read to the jury his affidavit for a continuance as containing the testimony of Winn, the State was permitted to introduce a witness to testify to statements made by said Winn while testifying in the Green case, contradicting some of the facts which defendant's affidavit alleged that Winn would testify to. Defendant objected, because no foundation had been laid for contradicting Winn in that manner. The act of February, 1875, expressly authorizes a contradiction in that mode.

There were three counts in the indictment, each charging Green and defendant with murder in the first degree. 5. A VERDICT. The jury, in their verdict, did not specify

under which count they found defendant guilty, but as each charged the crime of murder in the first degree, we cannot see why it was necessary to state in the verdict upon what count their finding was made. If, as charged in one count, they both assaulted, shot and killed Hughes, they were both guilty of murder. If, as charged in the other counts, Green shot and killed, and defendant was present aiding and abetting, defendant was equally guilty with Green of murder in the first degree.

The court was asked by defendant to compel the State to elect under which count she would try the defendant, 6. PRACTICE, CRIMINAL: indictment in several counts: election. but the court refused, and of this defendant complains. The court committed no error in overruling the motion. *State v. Porter*, 26 Mo. 201; *State v. Turner*, 63 Mo. 436; *State v. Sutton*, 64 Mo. 107. The trial was in all respects fairly conducted. The rulings of the court were as favorable to the defendant as the law would permit. The evidence was sufficiently balanced to prevent this court from reversing the judgment on the ground that the evidence did not warrant the verdict, and, all concurring, the judgment is affirmed.

AFFIRMED.