## HASELTINE, Trustee, and AETNA LOAN COMPANY v. SMITH et al., Appellants.

### Division One, February 20, 1900.

1. **Cause of Action:** ASSIGNMENT OF EQUITY RIGHT TO SUE. The bare right to maintain a suit in equity to set aside a deed obtained from the assignor by fraud, is not assignable. But if the assignee has an interest in the thing independent of the assignor and the fraudulent act lies in the way of the assignee's attainment of his independent right, he may acquire the assignor's right to sue to remove the obstacle, and a court of equity will entertain his suit.

2. ———: TRIED ON WRONG THEORY: PRACTICE. Where plaintiff, under the evidence, has a cause of action, but by his petition tried the case on a theory on which by the evidence he is not entitled to recover, and defendant did not file a timely demurrer, this court will not give judgment for plaintiff, but remand the cause to be tried again, by allowing an amendment of the petition, etc.

3. **Defective Pleading:** CHALLENGE AFTER TRIAL BEGUN. Courts do not look with favor on the practice of waiting until the trial, to challenge the sufficiency of a pleading; the fair way is to demur at the beginning. If a party lies in wait for his adversary the court should not allow him an advantage that he could not have attained in the open field.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

REVERSED AND REMANDED *(with directions).*

*A. F. Butts* for appellants.

*Sam H West* and *Massey & Tatlow* for respondents.

VALLIANT, J.—The real plaintiff in interest is the corporation, the Aetna Loan Company, who sues as assignee

of a $16,000 note secured by a deed of trust, in which its co-plaintiff Haseltine is the trustee.    The object of the suit as indicated in the original petition was to clear up the title by cancelling certain deeds held by the defendants Smith and Butts, to obtain a personal judgment for the amount of the mortgage note against defendant Rooker, and to foreclose the mortgage.    Upon the trial of the case it developed that the mortgage note was not due, and therefore an amended petition was filed seeking a cancellation of defendant's deeds and a decree that the property be vested in defendant Butts subject to plaintiff's mortgage debt.    Both the original and amended petition are lacking in perspicuity. It would seem that the plaintiff corporation has interests in the subject derived from two sources but whilst those interests are somewhat confounded in the petitions, yet the right upon which the plaintiff has chosen to found its suit is that of assignee of the $16,000 mortgage note, and the only relief sought is in reference to that right.    In the original petition it does not appear whether the plaintiff acquired the note sued on before or after the executing and recording of the deeds sought to be canceled, but in the amended petition, it is shown that the plaintiff's title was acquired after those deeds were recorded.

    The substance of the amended petition is that in January, 1895, one Rooker bought of L. A. Haseltine certain real estate in the city of Springfield, a part of which was the lot in question, lot 28 Crescent addition, and gave his note for the purchase money thereof, $16,000, and a deed of trust back on the property to secure it; that in April, 1895, $11,000, and March 12, 1896, $129, were paid on the note, and on March 14, 1896, L. A. Haseltine assigned it to plaintiff corporation; that on September 11, 1895, Rooker and wife conveyed the land to defendant Smith, subject to the above named deed of trust, whereupon Smith went into possession and still holds; that on December 26, 1895, there was

filed for record in the recorder's office of Greene county, a paper purporting to be a quit-claim deed of this lot 28 from L. A. Haseltine to defendant Smith, which was duly recorded, but that it was not in fact the deed of L. A. Haseltine, and that it was not ever delivered in contemplation of law, the facts relating thereto being, as the petition says, as follows: At a date prior to that of the $16,000 deed of trust, all the land embraced in it was owned by S. A. and S. C. Haseltine, brothers of L. A. Haseltine; they conveyed it to one Hall by deed of general warranty, and Hall executed two deeds of trust conveying this lot 28 to secure indebtedness of his, aggregating about $2,300, to the plaintiff loan company; but it turned out that at the time S. A. and S. C. Haseltine (whom we will hereafter call the Haseltines as distinguished from L. A. Haseltine) sold to Hall, there was a small judgment of the ·Greene County Circuit Court standing against them, which was a lien on the land, and after the plaintiff loan company had taken these two deeds of trust from Hall all the land above mentioned that had belonged to the Haseltines was sold under execution emanating from that judgment, and was bought by L. A. Haseltine, who received the sheriff's deed accordingly; then the Haseltines desiring to make good their warranty, arranged with their brother L. A. Haseltine, for a valuable consideration, which they paid him, to convey the land, then worth in the aggregate about $15,000, in various parcels to persons who had respectively become purchasers thereof under Hall, and in this arrangement was included a conveyance to be made to the plaintiff corporation of lot 28. In the temporary absence of the Haseltines from the city the carrying out of the arrangement was left with Mr. White, their attorney, and L. A. Haseltine was to quit-claim when and to whomsoever Mr. White requested. The petition then goes on to state that during the absence of the Haseltines defendant Smith falsely represented to Mr. White that the Haseltines

had told him they were willing to have the quit-claim made
to him, Smith, for the sum of $60, and accordingly Mr.
White, being thus mislead caused the quit-claim deed com-
plained of to be executed and delivered to defendant Smith,
who afterwards executed a deed of trust to secure a $500
note to defendant Butts, who was the attorney for Smith in
the scheme and knew all about it, and that since the bringing
of this suit Smith and wife had conveyed the lot by quit-
claim to Butts. The prayer of the amended petition is in
effect that the quit-claim deed to Smith and his deed of trust
to Butts be canceled and that Butts be decreed to hold the title
subject to the balance due on the plaintiff's $16,000 mortgage
note, which is stated to be $4,871. The answer was a general
denial.

It will be observed that the plaintiffs in this amended
petition make mention of the loan company's title under Hall
only incidentally, as a fact in the history of the quit-claim
deed from L. A. Haseltine to Smith. They make no com-
plaint of injury to that title, and seek no vindication of it,
in fact we do not know from the petition what the condition
of that interest was at the date of filing this suit. Whether
or not the debt was paid or satisfactorily secured otherwise,
or even that it was still held by the loan company, is not
shown, but the sole purpose of the plaintiffs as therein in-
dicated was to vindicate the rights of the loan company
under the title derived through L. A. Haseltine, who pur-
chased at the sheriff's sale.

At the beginning of the trial defendants objected to any
evidence on the part of the plaintiff on the ground that the
petition did not state facts sufficient to constitute a cause of
action, which objection was overruled, and exception duly
preserved. The evidence showed that in the beginning the
Haseltines owned all the land, which is a large quantity,
embraced in the $16,000 deed of trust, and they sold it by
warranty deed to Hall, who borrowed money from and had

other transactions with the plaintiff loan company, by which he became indebted to it in about $2,400, to secure which he executed the two deeds of trust as stated in the petition; that subsequent to the two deeds of trust to the loan company Hall executed a deed of trust in favor of the Haseltines to secure them on a note for $1,900, which was afterwards foreclosed and the title from that sale passed by mesne conveyances to the loan company, which held it at the time the transactions out of which this suit arose began; that in the negotiations whereby Hall borrowed the money and became otherwise indebted to the loan company for which he executed the two deeds of trust to it, the Haseltines had acted as the agents of the loan company and had furnished it an abstract showing the title clear in Hall, although at the time there was the small judgment above mentioned standing against them, which was a lien on the land, and under which the land was afterwards sold; that the land sold at that sheriff's sale was worth about $15,000, yet it was struck off to L. A. Haseltine for less than $100; this lot 28 was alone worth $2,000; the Haseltines were present at the sale, and had in fact pointed out the property to the sheriff for levy; that after his purchase at the sheriff's sale L. A. Haseltine sold to Rooker and the latter executed this $16,000 deed of trust, conveying all the land to secure the purchase money, and after that, Rooker sold this lot 28 to defendant Smith, subject to that $16,000 mortgage, whereupon Smith went into possession and still holds it; after that, negotiations began between the Haseltines and the respective purchasers of the various parcels under Hall, looking to a clearing up of those titles, and to that end they gave to their brother L. A. Haseltine notes and securities to the amount of $6,000 in consideration of which he agreed to quit-claim the land in parcels to whomsoever they requested (it would seem from the averments in the plaintiffs' amended petition that $6,000 is all that was then owing on the Rooker mortgage as $11,000 and

$129 had been paid on it) ; that pursuant to this arrangement
the Haseltines agreed with the loan company to have L. A.
Haseltine quit-claim lot 28 to it for a consideration of $60,
but as they were going to be absent for awhile they left the
matter to be closed up by Mr. White, their attorney, and
instructed their brother to make a deed to whomsoever Mr.
White named; that before going away one of the Haseltines
had a talk with defendant Smith, with a view of getting him
also to quit-claim the lot; the substance of that conversation
according to Haseltine's testimony was that he asked Smith
what he would quit-claim or give possession to the loan com-
pany for, and in turn Smith asked Haseltine what he would
quit-claim for, to which Haseltine replied for not less than
the amount due on the $16,000 mortgage, saying that he had
arranged to give a quit-claim to the loan company, and was
willing to give him, Smith, for a quit-claim about what it
would cost to foreclose, and if he would do that he could
go to Mr. White and arrange it with him.    The conversation
according to Smith's testimony was that Haseltine asked him
what he would take for his equity, to which he answered
that he had not thought about it, but would rather buy than
sell, and asked him what he would take, to which Haseltine
replied laughingly, about $16,000, and then said: "You had
better sell to us, and you think the matter over and report
to Mr. White, as to what you will take for your equity,
and whatever arrangements you make with him will be satis-
factory to us."    Haseltine testified that the only authority
he gave to Mr. White was to see to the execution of a quit-
claim deed to the loan company and give it to Mr. Massey as
attorney for the company, and receive from him $60.    Mr.
White's testimony was to the effect that Haseltine told him
that they were trying to make a settlement with the loan com-
pany which was represented by Mr. Massey and that he
(White) was to see to the execution of a deed by L. A. Hasel-
tine to the loan company, and receive for it $60, but upon

seeing Mr. Massey he discovered that the loan company would require also a quit-claim deed from Smith who was in posession, and not knowing how to meet that condition witness concluded to wait for Haseltine's return, and while the matter was in that condition Smith came to him and offered him $60 for the quit-claim and he not understanding the situation and supposing that all his client wanted was the $60 and would as leave have it from Smith as another, prepared the deed, sent it to L. A. Haseltine, who executed it and returned it to him, and he in a short while delivered it to Smith, and received from him as security for the $60, a note of defendant Butts, secured by assignment of a lease; afterwards when Haseltine returned and was informed of what was done, he objected strenuously and said witness had no authority to do so; then witness went to defendant Butts and told him of Haseltine's objection, and his own want of authority to do what he had done, and asked Butts to get him out of the trouble, as he expressed it, and at the same time returned Butts his note and the assignment of the lease which Butts took and has kept. Soon after getting the quit-claim deed from White, Smith executed the deed of trust to Butts for $500. The evidence does not sustain the charge in the amended petition that Smith made false representations to White which induced him to make the deed, but it does show that Smith was better informed in the matter than White, and knew that White had no authority to make a deed to him. True, Haseltine had told him to go to White and whatever White did would be satisfactory, but in the same conversation he told him that he had arranged to sell to the loan company, that he would not sell to him for less than $16,000 but would only buy from him, and it was for the purpose he referred him to White; his words were, according to Smith's own testimony: "Think the matter over and report to Mr. White as to what you will take for your equity, and whatever arrangements you make with him will be satisfactory to us."

Smith, therefore, was dealing with an agent, whom he knew was exceeding his authority, and was doing what his principal had expressly refused to do.    The evidence also fails to show that in this transaction Butts was acting as the attorney for Smith, but it does show that Butts became a party interested in it before it was concluded, sufficiently so to charge him with notice of its details.    Since the beginning of this suit Smith has quit-claimed to Butts, and the $500 deed of trust from Smith to Butts was surrendered. After the quit-claim from L. A. Haseltine to Smith had become known, the loan company brought suit against all the Haseltines and these defendants, based on its title derived through Hall, stating substantially the facts above set forth, charging the Haseltines with fraud and conspiracy with the other defendants, and praying to cancel the sheriff's deed to L. A. Haseltine, his deed to Rooker, the $16,000 deed of trust from Rooker to Haseltine, the quit-claim from Rooker to Smith, the $500 deed of trust from Smith to Butts, to decree plaintiffs' title derived through Hall to be perfect, and for possession.

After that suit was brought L. A. Haseltine assigned the $16,000 note, or what was left of it, to the plaintiff loan company, who then dismissed that, and brought this suit.    The finding and judgment were for the plaintiff as prayed in the amended petition.    Defendants after motion for new trial bring this appeal.

From the foregoing statement it will be seen that the evidence made out a better case for the plaintiffs than they made for themselves, either in their original or amended petition.    If they had stood on their title derived from Hall they would under the evidence, have been entitled as against the three Haseltines to relief from the sheriff's deed to L. A. Haseltine and the deed of trust held by him or them, and also relief from the deeds, thereon dependent, to Smith and Butts; but standing as the plaintiff loan company

does in this record in the shoes of L. A. Haseltine, or not even in as favorable position as he stood, but rather as a mere assignee of his right to sue in equity to redress a wrong perpetrated on him, its position is not so favorable.

Whatever may have been the original purpose of the $16,000 mortgage note as between the immediate parties to it, it is quite evident that at the time it was transferred by L. A. Haseltine to the plaintiff loan company, the only purpose it was serving or intended to serve was that of enabling the Haseltines to manipulate the title to the land involved. Its character, if it ever possessed it, of a bona fide security for money, had been lost sight of or was ignored. The amended petition states that there had been paid on the note, by whom is not stated, $11,000 and $129, and in the prayer of the petition the amount estimated to be due thereon is $4,871. In addition to this, L. A. Haseltine had, as he said, received from his brothers securities which he valued at $5,000 to $6,000 in consideration of his agreement to quit-claim to the respective loan companies, including plaintiff, who had acquired interests in the various parcels of land under the Hall title. What interest then did L. A. Haseltine have in the note, and how could he, even if he had retained it, have made such a showing of injury and innocence as would arouse a court of equity to his relief? Suppose L. A. Haseltine were the plaintiff here, what could he say that would entitle him to a cancellation of his deed to Smith? But conceding that he could have maintained such a suit he could not assign his right to do so. The bare right to maintain a suit in equity to set aside a deed obtained from the assignor by fraud is not assignable. [Smith v. Harris, 43 Mo. 557; Wilson v. Railroad, 120 Mo. 45; 3 Pom. Eq. (2 Ed.), sec. 1276; 2 Story, Eq. (13 Ed.), 1040g.] Besides, we must remember that the $16,000 mortgage upon which this suit is bottomed, and to clear the way for its foreclosure this relief is prayed, covers property which the

plaintiff says is worth $15,000 of which the lot in question is only a small part, and the balance claimed to be due is only $4,871. Even if the plaintiff's petition was otherwise fair on its face, it shows that, leaving out this Smith lot there is property enough left in the mortgage to pay the debt three times over. The petition was fatally deficient, and the court should have sustained the defendant's objection to admitting any evidence to support it.

But the object of all judicial proceedings should be the attainment of right and justice, and in courts of equity the rules of procedure admit of greater flexibility to accomplish this object than the more strict rules of law. While the court is bound to sustain an objection of that kind, even at that stage of the case, if it is well taken, yet it does not look with favor on that practice. The fair way is to challenge the sufficiency of the petition by demurrer in the beginning, and if it is adjudged insufficient and is susceptible of amendment, the fault may be corrected. If a party lies in wait for his adversary the court should not allow him an advantage that he could not have attained in the open field. The doctrine above laid down that a right to sue in equity for relief against a fraud perpetrated is not assignable has this qualification: If the assignee has an interest in the thing independent of the assignor and the fraudulent act lies in the way of the assignee's attainment of his independent right, he may acquire the assignor's right to sue, to remove the obstacle, and a court of equity will entertain it. That was the case in Smith v. Harris, *supra*, and is recognized by the text writers above cited on that point. Thus, if the plaintiff loan company, in order to clear its title derived from Hall had seen fit to buy the mortgage note held by the Haseltines instead of attacking its validity and had planted itself in court on the Hall title, and had attacked the quitclaim deed from Haseltine to Smith on the ground that it was the unauthorized act of an agent and that Smith knew it and

Butts had notice of it, the court under this evidence would have been justified in granting the relief prayed; the plaintiff under such condition would have been entitled to subject the title that Smith derived from Rooker and transferred by quit-claim to Butts, to the foreclosure of the Haseltine mortgage, whatever may be said of its validity otherwise, because the title from Rooker to Smith was given expressly subject to that mortgage.

The evidence showing *prima facie* at least that plaintiff is entitled to relief, it would be unjust to dismiss its suit for a defect in its petition, especially in view of the failure of defendants to demur in due season, and the lack of specification in the objection, even when made. On the other hand it would be unjust to defendants to allow the petition to be amended and the decree to stand without further trial, because the case was not tried on the theory above indicated, and defendants have a right to address their evidence to the issues tendered in the petition. And upon a retrial of the case the facts as hereinabove stated are not to be taken as adjudications, but the issues must be tried on the evidence to be adduced. The judgment is reversed and the cause remanded to the circuit court with directions to allow the plaintiffs to amend their petition if they see fit to do so, and to try the cause anew, in conformity to the views above expressed, or in case plaintiffs do not see fit to so amend, to dismiss their bill and render final judgment for defendants. All concur.