## JOY, Respondent, v. CALE et al., Defendants; STARCK et al., Appellants.

### St. Louis Court of Appeals, April 30, 1907.

1. APPELLATE PRACTICE: Instructions: Failure to Give Instruction. If either party to a suit fails to request an instruction upon all points arising in the case, he cannot on appeal be heard to complain of the failure of the court to give instruction upon a given point.

2. ————: Duty of Appellate Court to Examine Record. Under section 866, Revised Statutes of 1899, it is the duty of the appellate court to examine the record and render such judgment as ought to have been rendered; and where there is no substantial evidence to support a verdict, it will reverse the case.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Warren D. Isenberg* for appellants.

The article delivered is not the sound piano sold by Mrs. Sampson, plaintiff's agent. There can be no ques-

tion of her agency; plaintiff's testimony shows that she was her agent, all the testimony shows it—her respresentation bound plaintiff. If she acted beyond her authority in representing the piano sound, plaintiff, or some one for her, should have denied her agency and authority. Ackley v. Staehlin, 56 Mo. 558; Oldham v. Henderson, 4 Mo. 295; Baker v. Stonebraker, 36 Mo. 338; Boggs v. Railroad, 118 Mo. 328; Lionberger v. Pohlman, 16 Mo. App. 392; Fish v. Christopher, 11 Mo. App. 483; Powell v. Railroad, 76 Mo. 86; Howell v. Daugherty, 25 Mo. App. 326; Pollack v. Hannauer, 26 Mo. App. 261; Blackwell v. Adams, 28 Mo. App. 61; Cohn v. Kansas City, 108 Mo. 387; Moore v. Railroad, 28 Mo. App. 622. Where an agent makes representations it binds the principal. Mrs. Sampson was plaintiff's agent; she represented the piano as sound; that it would cost them $90. It is admitted it was broken, and an old break, at that. Rand v. Wickham, 60 Mo. App. 44. The evidence of plaintiff did not make a case, and the demurrer of defendants at close of plaintiff's case should have been given. Anyhow at the end of the whole case the demurrer should have been sustained. Weaver v. Railway, 60 Mo. App. 207.

*Thomas Bond, Geo. H. Moore* and *W. K. Koerner* for respondent.

(1) Defendants made their purchase as a committee appointed by a voluntary association of individuals, of which they were members; they are therefore liable as principals. Insurance Co. v. Burkett, 72 Mo. App. 1; Kuhl v. Meyer, 35 Mo. App. 206; Richmond v. Judy, 6 Mo. App. 465; Heath v. Goslin, 80 Mo. 310. (2) Defendants did not disclose to plaintiff or her agent that they were acting on behalf of the Sunday School; they are therefore liable as agents of an unnamed principal. Porter v. Merrill, 138 Mo. 555; Furniture Co. v. Crawford, 127 Mo. 356; Hamlin v. Abell, 120 Mo. 188; Lap-

sley v. McKinstry, 38 Mo. 245; McClellan v. Hillyer, 27 Mo. 162.

BLAND, P. J.—In 1903, plaintiff had in her house a square piano, which she wished to sell. Mrs. Sampson was nursing Miss Hill, plaintiff's sister, who lived with plaintiff, and plaintiff told Mrs. Sampson that she wished to sell the piano and would take one hundred dollars for it, and pay her a commission of ten dollars if she would find a purchaser, and at the same time represented to Mrs. Sampson that the piano, "though old, was perfectly sound and whole; that she had had it tuned inside of a year and it was a very sweet toned instrument." Defendants were appointed a committee by the Cote Brilliante Sunday School (unincorporated) to purchase a piano for the use of the school. Mrs. Sampson was a member of the Sunday School and went to the committeemen, and told them plaintiff had a piano for sale at a hundred dollars; that she was to have ten dollars as a commission, if she found a purchaser, and would donate her commission, if the committee would purchase the piano, and repeated to them what plaintiff had said to her about its condition, adding that plaintiff was a good reliable woman. After interviewing the committee, Mrs. Sampson saw the plaintiff and said to her that she had agreed with the defendants to donate her commission of ten dollars if they would buy the piano, and asked plaintiff if it would be satisfactory to her if defendants paid her ninety dollars for the piano; plaintiff replied that she did not care what Mrs. Sampson did with the ten dollars, and would be satisfied to receive ninety dollars for the piano. Afterwards, two of the defendants called at plaintiff's house to look at the piano. The plaintiff was not at home but the piano was shown to them by Miss Hill, plaintiff's sister, who testified that she made no representations as to the condition of the piano; that it was thoroughly examined by the two com-

mitteemen, and after the examination they said they would recommend it to the committee; that she then wrote her sister, who advised her to close the trade. Subsequent to the inspection of the piano by the two committeemen, the church organist and Mrs. Sampson called and the latter told Miss Hill that the committee had decided to take the piano, and assured Miss Hill the money was on hand to pay for it, and that it would be paid for not later than the middle of the week. Miss Hill then telephoned Mr. Lanning, clerk of the church to know when she could get the money for the piano. Lanning testified he told Miss Hill over the telephone, that he would give her a check just as soon as the piano was delivered in good condition; that he was going out to the church to see that it was delivered all right. In the afternoon of the same day, Miss Hill had the piano taken to the church. Lanning was at the church and inspected the piano and found the metal plate to which the strings were fastened broken, and on the next morning telephoned Miss Hill that they could not take the piano because it was broken. Miss Hill replied that she did not know it was broken.

The evidence shows that the break in the metal plate was an old one, and on account of it the piano could not be tuned to concert pitch, and to repair it would cost more than the instrument was worth. The evidence further shows that the break could not be seen without unscrewing and taking off the top of the piano; that this was not done by the two committeemen, who went to plaintiff's house to look at the piano, and the break was not discovered by them. Neither of the committeemen was a piano expert, and they testified that they relied upon the representations of Mrs. Sampson in regard to the condition of the piano and did nothing more than look at it and one of them ran his fingers over the keys. Defendants offered to return the piano to plaintiff but

she refused to receive it. The suit is to recover the purchase price of the piano. The verdict was for plaintiff and defendants appealed.

The court instructed the jury as follows for plaintiff:

"1. The court instructs the jury that if you find from the evidence that sometime during the months of September and October, 1903, defendants called upon plaintiff for the purpose of negotiating the sale of a second-hand piano belonging to plaintiff, and that defendants agreed to purchase the same and to pay plaintiff the sum of one hundred dollars therefor, and that thereafter plaintiff delivered said piano and defendants received and accepted the same, but that defendants have never paid the price agreed to be paid to plaintiff, nor any part thereof, then you are instructed that plaintiff is entitled to recover, unless you believe that defendants have proven an express warranty of the soundness of the piano and a breach thereof as indicated in other instructions given you.

"2. The court instructs the jury that if you believe from the evidence that the piano in question in this case was a second-hand piano, and was represented to defendants as such, then there was no implied warranty as to its quality, and if you further find that said piano was sold and delivered by plaintiff to defendants without any express warranty as to its soundness made by plaintiff or by any authorized agent for her, then your verdict should be for plaintiff.

"3. The court instructs the jury that the burden of proof is upon the defendants to establish the alleged warranty and a breach by a preponderance of the evidence, and unless you believe that said warranty and a breach thereof have been proven by the greater weight of the evidence, then you are instructed that said defendants are not entitled to any benefit therefrom in this action.

"4. The jury are instructed that if they believe from the evidence the plaintiff or her agent represented the piano to be sound, and that it was not sound, that plaintiff was to deliver the piano in a sound condition; that if you believe from the evidence that the piano was not in fact sound but was broken, then the defendants were not bound to accept the same, nor to pay for same, but had the right to return or offer to return the same within a reasonable time after the discovery by them of the defective condition of the piano, if you believe from the evidence that the piano was unsound and defective at the time of the sale; and if you further find from the evidence that the defendants were ready and willing and offered to return the piano to the plaintiff, within a reasonable time, all things and facts in evidence considered, your verdict should be for the defendants.

"5. The court instructs the jury that if you find for the plaintiff and if you find that neither plaintiff nor any authorized agent ever expressly warranted the quality of the piano, you will award her damages in the sum of one hundred dollars, with interest from the date on which the piano was delivered to defendant, if you believe it was so delivered, at the rate of six cent per annum."

After the jury retired to consider of their verdict, and deliberating for a short time, through the bailiff, asked the court to instruct them whether or not Mrs. Sampson was plaintiff's agent in the transaction. The court refused to give any further instructions to the jury. As abstract propositions of law, the instructions are correct, but, as shown by the request of the jury for further instructions, they are confusing. There is no evidence whatever that defendants, or either of them, called upon plaintiff, or had any negotiations whatever with her, looking to a purchase of the piano. The evidence is all one way, that Mrs. Sampson was authorized by plaintiff to sell the piano, and that she, as plaintiff's

agent, brought about the sale; and an instruction should have been drafted on the evidence tending to show the sale was made by Mrs. Sampson, as plaintiff's agent. But it is insisted by defendants, that the failure of the court to give of its own motion, and of defendants' counsel to move the court to grant, an instruction predicated upon the evidence, from which the jury could have found Mrs. Sampson was plaintiff's agent for the sale of the piano, was mere non-direction and hence not reversible error. The cases are legion holding that it is the duty of each party to a suit to request instructions upon all points of law which arise in the case, and that if either party fails to do so and is cast in the suit, he cannot be heard on appeal to complain of his own negligence in failing to ask for instructions to which he was entitled. Section 866, Revised Statutes 1899, makes it the duty of appellate courts to "examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law." This power has often been exercised by the appellate courts of this State.   [Murdock v. Ganahl, 47 Mo. 135; Darrier v. Darrier, 58 Mo. 222; Durkee v. Chambers, 57 Mo. 575; Bell v. Railway, 86 Mo. l. c. 612; Turner v. Haar, 114 Mo. 335, 21 S. W. 737; Haseltine v. Smith, 154 Mo. 404, 55 S. W. 633; Musser v. Harwood, 23 Mo. App. 495; Berning v. Medart, 56 Mo. App. 443; Oberbeck v. Mayer, 59 Mo. App. 289; Richardson v. Drug Co., 92 Mo. App. 515.] The defense was a breach of warranty of the soundness of the piano. The evidence that Mrs. Sampson, as plaintiff's duly authorized agent, represented the piano to be sound and in good condition, to the purchasers, and that they, relying upon the truth of these representations, made the purchase, is not controverted at all; and that the piano was so badly broken in a vital part as not to be worth repairing, and was in fact worthless as

a piano, is practically conceded by plaintiff. To rebut this positive and direct evidence and get around its force and effect, Miss Hill testified for plaintiff, that two of the committee appointed by the Sunday School made a thorough examination of the instrument before purchasing it. Her evidence, in view of the circumstances and proof in the case, is of no value, for it is conclusively shown that the break in the metal plate was hidden and could not be seen without unscrewing the top of the piano and taking it off. The inspectors did not do this, and Miss Hill, who was present when the examination was made, swore she did not know of the break. Defendants' evidence tends to show that the two members of the committee, who went to see the piano, did so at the request of Mrs. Sampson, and for the sole purpose of seeing whether or not it was presentable; and that the only inspection they made was merely to look at the external parts of the piano, one of them running his fingers over the keys. Neither of the committeemen was a pianist, or knew of anything about the internal mechanism of a piano. We think the evidence is all one way that the piano was sold on a warranty and that there is no substantial evidence in support of the verdict of the jury. The verdict could not have been reached but for prejudice or passion on the part of the jury. The case is a proper one for the exercise of our power under section 866, supra, therefore, the judgment is reversed and the cause remanded for new trial. All concur.