LEE A. COLEMAN, Respondent, v. CHARLES M. TREECE et al., Appellants.

Springfield Court of Appeals, July 7, 1910.

1. MALICIOUS PROSECUTION: Sufficiency of Evidence. In an action for damages for malicious prosecution the evidence is examined and held sufficient to take the case to the jury.

2. PLEADING: Malicious Prosecution: Sufficiency of Petition. In an action for damages for malicious prosecution an objection to the petition was made at the beginning of the trial, assigning as a defect the use of the words, "proper cause," instead of "probable cause." The objection is held not to be well taken especially when the attack was not made until the trial was begun and the petition had previously alleged the want of "probable cause."

3. EVIDENCE: Malicious Prosecution. In a suit for damages for malicious prosecution against the directors of a corporation, by the deposed manager of the company, it was error to admit evidence to prove the feeling of the defendants toward each other and toward other members of the corporation.

4. ———: Testimony of Witness Set Out in Motion for Continuance: Right to Show Contradictory Statements Without Laying Foundation. Plaintiff set up in the motion for a continuance what would be the testimony of an absent witness. Defendants to avoid the continuance admitted that the witness if present would testify as alleged in the motion. On the trial, after the statement was read, as the witness' testimony, defendant offered to show that the witness had made statements contradictory to those set out in the motion for a continuance. The trial court rejected the offer. Held, error and contrary to the provisions of Section 687, Revised Statutes 1899.

Coleman v. Treece.

5. **INSTRUCTIONS: Malicious Prosecution: Punitive Damages.** Plaintiff had been discharged as manager of a corporation. The directors also had him arrested for embezzlement. He was discharged by the justice on the embezzlement charge, and sued the directors for malicious prosecution. An instruction on punitive damages which allowed the jury to consider the prosecution as being "against plaintiff's right as manager of the company," held erroneous.

6. **MALICIOUS PROSECUTION: Criminal Law: Embezzlement.** Plaintiff was manager of a mercantile corporation; he was discharged by the directors. He claimed that his employment was for a year and before he left he took in money a sum equal to what his salary would be for the balance of the year, amounting to $225. He told a clerk about taking the money and left a receipt for the same in the safe. He was indebted to the corporation for about $60 at the time. The directors had him arrested for embezzlement. He was discharged by the justice. In a suit for malicious prosecution the action of the justice is held proper on the ground that there was strong evidence that plaintiff had not acted feloniously.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*Ward & Collins* for appellants.

(1)    Plaintiff's petition does not state facts sufficient to constitute any cause of action, and is not sufficient to support the judgment.   26 Cyc. 10, 74; Witascheck v. Glass, 46 Mo. App. 212; Moody v. Deutsch, 85 Mo. 237; Kelly v. Osborn, 86 Mo. App. 239; 13 Ency. Pl. and Pr. 427; 3 Am. and Eng. Ann Cas., 720; 19 Am. and Eng. Ency. Law (2 Ed.), 655; Freymark v. Bread Co., 55 Mo. App. 437.   (2)   "If any officer, agent, clerk, servant or collector of any incorporated company shall embezzle or convert to his own use, or shall take, make way with, or secrete with the intent to embezzle or convert to his own use without the assent of his employer, any money, etc., belonging to any other person, which shall come into his possession or under his care by vir-

tue of such employment, he shall be deemed guilty of embezzlement." R. S. 1899, sec. 1912; 6 Am. and Eng. Ann. Cases, 344; 2 Bishop on Criminal Law (4 Ed.), 332; Kelly's Criminal Law (2 Ed.), 460; State v. Pratt, 98 Mo. 482; State v. Jennings, 98 Mo. 493; State v. Knowlin, 111 Mo. 473; State v. Woodward, 171 Mo. 593; State v. Knowles, 185 Mo. 141; State v. Wise, 186 Mo. 42; State v. Merkel, 189 Mo. 315; State v. Shour, 196 Mo. 242. (3) When an affidavit for continuance is filed setting up what a witness would swear, the cause will be continued, unless the opposite party will admit that the witness, if present, would swear to the facts set out in said affidavit; but the party moving therefor shall read as the evidence of such witness the facts so stated in such affidavit; and the opposite party may disprove the facts disclosed, or prove any contradictory statement made by such absent witness in relation to the matter in issue and on trial. R. S. 1899, sec. 687; Nagel v. Transit Co., 104 Mo. App. 446; State v. Miller, 67 Mo. 608; Ely-Walker v. Mansuer, 87 Mo. App. 105; Nugent v. Armour, 81 S. W. 506. (4) The question of probable cause in an action for malicious prosecution is one of law for the court when the facts bearing upon it are conceded, and not in dispute. Matlick v. Crump, 62 Mo. 21; Grant v. Reinhart, 33 Mo. App. 74; Thomas v. Smith, 51 Mo. App. 605; Mysenberg v. Engleke, 18 Mo. App. 346; Sharp v. Johnson, 59 Mo. 557, 76 Mo. 660; Taafe v. Kyne, 9 Mo. App. 18; Moody v. Deutsch, 85 Mo. 237. (5) To sustain an action for malicious prosecution, want of probable cause and malice are both essential; and it is not sufficient to show malice without also showing want of probable cause. Burris v. North, 64 Mo. App. 429; Jordan v. Railroad, 105 Mo. App. 446.

*McKay & Corbett* and *Faris & Oliver* for respondent.

(1) Malice may be inferred from the "want of probable cause." It being an inference which the jury

may draw from all the facts and circumstances in the case, the court will not on this point withdraw the case from the jury's consideration. Cosperson v. Spraule, 39 Mo. 40; Ruth v. Transit Co., 98 Mo. App. 16; Fugate v. Miller, 109 Mo. 286; Sharp v. Johnson, 59 Mo. 577. (2) To constitute embezzlement, the conversion must be something more than an honest mistake. So where under the construction of a contract a person is not entitled to the use of money until a settlement is made, the wrongful use and holding thereof does not constitute embezzlement, even though his construction of the contract was wrong. State v. Waldeck, 87 Iowa 369; State v. Reilley, 4 Mo. App. 399; State v. Beaty, 82 Ind. 228; People v. Hurst, 62 Mich. 276; State v. Fox, 136 Mo. 139; State v. Silva, 130 Mo. 440; State v. Pitts, 58 Mo. 556; State v. Turphy, 78 Mo. App. 206.

GRAY, J.—This proceeding was commenced by the respondent against the appellants in the circuit court of Pemiscot county, on the second day of October, 1908, upon a petition charging the defendants with malicious prosecution. The petition states that on the 7th day of October, 1907, the defendant, Charles M. Treece, at the suggestion and request of the other defendants, and without reasonable or probable cause, charged the plaintiff before a justice of the peace with the crime of embezzlement; "that defendants did maliciously and without proper cause aforesaid procure said justice to issue a warrant for the arrest of plaintiff upon said charge;" that a warrant was issued, plaintiff was arrested, and upon preliminary examination before the justice, was discharged; and that on account of the malicious acts of defendants, plaintiff has been damaged in the sum of ten thousand dollars, and asking for that sum as actual damages and ten thousand dollars for punitive damages.

The answer was a general denial and a further plea that whatever was done in the premises by the defend-

ants, was done in good faith and further, upon the advice of competent counsel, after a full, fair and honest investigation of all the facts and a narration of said facts to counsel. There was a trial by jury, resulting in a verdict in favor of plaintiff for five hundred dollars actual damages and forty-five hundred dollars punitive damages, signed by ten of the jurors. The defendants appealed.

During the years of 1906 and 1907, appellants and respondent were stockholders in a corporation known as the Farmers' Mercantile Company. This company operated a store and bought, ginned and sold cotton at the town of Steele. During the year 1906 the respondent was general manager of the company, and during that year the company made and declared a dividend of twenty-five per cent. At the close of that year, the respondent was re-elected as manager, and while there was some conflict relating to the period of his employment, the by-laws of the company provide that the manager shall hold his position for the term of one year. During the year 1907 the defendants, who were the directors of the corporation, and the other directors and stockholders of the company, became dissatisfied with the plaintiff's management. Instead of making money, the corporation had lost money and was several thousand dollars in debt. The respondent when called upon, was unable to give the board of directors any reason for the financial condition of the company. It was decided by the board of directors to call for the resignation of the plaintiff and a request therefor was made. The plaintiff refused to resign, whereupon the board proceeded to hold a meeting and a motion was made and carried discharging the plaintiff. This was about the first of October, 1907. The plaintiff knew of the contemplated action of the board, and took $225 of the money of the corporation. No one knew of this except a clerk in the office, and he was instructed by plaintiff to say nothing about it, and

told if the board discharged plaintiff, he would keep the money for his salary for the balance of the year. He was getting seventy-five dollars per month, and this $225 would equal his salary for October, November and December. No entry was made on the books of the company showing the money had been taken, but a receipt was left in the safe.

After the company made the order discharging the plaintiff he was notified of it, but refused to surrender the keys to the store, or permit Mr. Chambers, who was selected by the board as his successor, to take charge of the business, but finally did consent to a man by the name of Franklin acting as manager. The board, when considering the affairs of the company and the discharging of plaintiff, attempted to hold meetings at the usual meeting place, but plaintiff insisted on being present, notwithstanding he knew the board desired to transact the business in his absence.

While things were in this condition, and upon learning that plaintiff had taken the $225, the defendants sent for an attorney to advise them as to what steps to take. When the attorney came, the defendant, Treece, talked to him and claims he gave the attorney all the facts in the case. In addition to that attorney, Doerner, one of the officers of the company, was a lawyer and he was consulted as to what steps should be taken. The attorneys advised that the plaintiff was guilty of embezzlement, and thereupon a warrant was sworn out for his arrest.

When he was taken before the justice, all the facts relating to the case were testified to and the justice discharged the plaintiff. Without going into details of the evidence it is sufficient to say that an issue was raised as to whether the defendant, Treece, gave to the attorneys all the facts he knew relating to plaintiff's actions. There is a dispute as to whether the attorneys were notified of the important fact that when plaintiff took the money, it was taken as his advance salary, and

that he left a receipt for the same. This question, however, was submitted to the jury by proper instructions, and the verdict settled the question.

While the plaintiff was acting as general manager, he was furnished premises in which to live. At the same time the criminal prosecution was instituted for embezzlement, a like charge was made against him for unlawful detainer. Both cases were heard the same day before the justice. The misdemeanor charged for unlawful detainer was before a jury, resulting in a verdict of not guilty.

The plaintiff offered testimony tending to prove that when the constable served the warrant upon him on the embezzlement charge, the defendants, Gibson and Coleman, were watching, and immediately afterwards asked the constable for the key, and when they were notified that he did not get the keys from the plaintiff, Coleman, said: "You didn't, by God, that is what we did it for, to get the keys in our possession."

Without further setting forth the testimony, we are of the opinion that the evidence was sufficient to take the case to the jury, and unless errors appear in the action of the court in the admission or rejection of testimony, or in the instructions, the judgment must be affirmed.

Appellants' first assignment of error is that the petition does not state facts sufficient to constitute a cause of action. The precise objection to the petition is that it uses two words, "proper cause," where "probable cause" should have been used. The petition had previously alleged that the defendants without reasonable or probable cause, did charge the plaintiff with embezzlement, and then follows: "That defendants did maliciously and without proper cause as aforesaid." The word "aforesaid" refers to the want of reasonable or probable cause theretofore stated. No objection was made to the petition until the opening of the trial. The courts do not look with favor upon attacks made at that

stage of the proceeding, and if a petition is sufficient to support a judgment, it is good against such an attack. [Hazeltine v. Smith, 154 Mo. 404, 55 S. W. 633.]

It is next claimed that the court committed error in permitting testimony relating to the prosecution of the unlawful detainer case. That proceeding and the embezzlement charge were commenced at the same time, and it was impossible under the circumstances to keep the evidence relating to the unlawful detainer charge out of the case. We have herein set forth an alleged conversation between the constable and two of the defendants just after plaintiff's arrest. The plaintiff claims the remark of the defendant, Coleman, related to the embezzlement charge, and the defendants claim it related to unlawful detainer charge.

In order to present the defendants' theory that it related to the unlawful detainer charge, it would have been necessary to show that such a charge had been filed, and therefore we do not believe defendants were injured by the fact that a complaint against plaintiff for unlawful detainer had been made.

The court permitted the plaintiff, over the objection of the defendants, to prove the feeling of the defendants toward each other, and toward other members of the corporation. This was error, and could have no other office in the case except to prejudice the jury against the defendants.

The plaintiff had filed an application for a continuance and defendants agreed to admit the statement prepared by plaintiff and set up in his motion for continuance, as to the testimony of one Andy Overturf. Thereupon the motion for continuance was overruled and at the trial the plaintiff offered in evidence the statement in his motion for continuance that he claimed Andy Overturf would testify to. In this statement it was claimed that the defendant, Coleman, in the presence of Overturf, called the plaintiff a thief, and stated that he expected to get the thief out of the store irre-

spective of what means were necessary, and if it cost the value of the entire stock, and threatened to prosecute the plaintiff upon any charge that tended to secure his removal as manager. The defendants undertook to show by Mr. Kemp, one of the plaintiff's witnesses, that Overturf had made contradictory statements to those set out in his testimony in the motion for continuance. The plaintiff objected and the court sustained the objection and stated that defendants would have to lay the foundation by the witness before they could contradict him. After this ruling, the defendants attempted to ask the witness if Overturf had not made certain statements to him. Whereupon the court said: "The court will not allow you to propound the question. The court has said it was improper and for the purpose of getting it before the jury, the court will not permit you to propound it." The defendants excepted.

The testimony of Overturf read to the jury, was the strongest evidence in the case proving malice against plaintiff on the part of the defendant, Coleman. The ruling of the court was in the face of the statute. [Section 687, Revised Statutes 1899, and was error as declared in the following cases: Nagel v. Transit Co., 104 Mo. App. 438, 79 S. W. 502; State v. Miller, 67 Mo. 604; Ely Walker D. G. Co. v. Mansur, 87 Mo. App. 105.]

The respondent claims that this testimony was only accumulative. No other person testified to this exact language. It is true the defendant Coleman, denied it, but he was an interested party and the jury might have taken Overturf's testimony in preference to his. When the defendants offered to prove by their witnesses that Overturf and made contradictory statements, they should have been permitted to do so.

The importance of the action of the court in refusing to admit the proof of contradictory statements by Overturf, is made more prominent from the fact that the court in an instruction called special attention to the statement of Overturf, and told the jury that it was

to be taken and considered the same as if the witness was present and testifying.

The appellants complain of the action of the court in refusing certain instructions asked by them. The instructions were fairly covered by other instructions given, and the point is ruled against them.

In one of the instructions relating to plaintiff's damages, the following is found: "And you are further instructed that if you believe and find from the evidence that said alleged acts of the defendants were done wantonly, maliciously, and against the plaintiff's rights as the manager of the firm known as Farmers' Mercantile Company, then you are at liberty to award punitive or exemplary damages." This instruction was misleading and should not have contained the reference "against the plaintiff's right as the manager of the firm known as the Farmers' Mercantile Company."

The board of directors had the right to discharge the respondent as his contract was executory, and if he was wrongfully discharged, he could collect his salary in an action for damages. The instruction singled out and gave prominence to a matter that should not have been mentioned at all in the instruction.

The appellants maintain that the undisputed evidence shows that respondent was guilty of the crime of embezzlement, and therefore, the judgment should be reversed without remanding. At the time plaintiff took the money, he was indebted to the corporation in about fifty dollars or sixty dollars and therefore, the amount taken was in excess of what the company would have owed him on a settlement if his salary had been allowed to the first of the year. There was no testimony that his salary was payable in advance, and it may be said that his action in taking the money was wrongful, under the circumstances. But he was denying the right of the company to discharge him and was claiming that under his contract he was entitled to remain as manager until the first of the year, and

he took the money for what he claimed was due him for his unexpired term, and his action in giving a receipt and telling the clerk about it, was strong evidence that he did not act feloniously. And when these facts appeared before the justice, he properly found no felony had been committed, and formally discharged plaintiff. There was testimony at the time defendants caused the arrest of plaintiff, they knew of his claim to the money and the circumstances under which he had taken it, therefore, the facts and circumstances were sufficient to take plaintiff's case to jury.

The appellants further claim that the evidence shows that they acted in good faith and what they did was upon the advice of counsel to whom they had narrated all the facts. We have heretofore stated in this opinion that there is a conflict in the evidence as to whether the defendants notified the attorneys that plaintiff had executed a receipt at the time he took the money. This was an important piece of testimony bearing on the defendants' contentions. There is much testimony in the case to show that so far as the defendant, Coleman, was concerned, that he was acting in good faith, and did not encourage the criminal prosecution. He is related to the plaintiff and his testimony, if believed, shows that he was acting in good faith and was trying to peaceably get plaintiff to submit to the action of the board in discharging him, and to return the $225 he had taken. On the other hand there is some testimony of statements and threats made by him which tend to prove another purpose.

The plaintiff's conduct is in a measure responsible for some of the acts of the defendants. He seemed to have the idea that he had the exclusive control over the corporation's business; that the board of directors were under him and only had such rights and privileges as he saw fit to extend to them. The testimony shows that insurance policies were canceled on account of his threats to destroy the company's property. It may be

said, however, in his behalf, these threats were made after the criminal charge had been made against him and disposed of.

Everything considered, the case is one for the jury, and if submitted on proper evidence and instructions, the verdict will be conclusive, but owing to the fact that there is a sharp conflict in the testimony and the verdict was returned by only ten of the jurors, it is important that the case submitted be free from material error. For the reason that the court erred in admitting the testimony relating to statements of ill feeling by the defendants against each other and other officers of the corporation, and on account of the action of the court in refusing to permit the defendants to offer the testimony contradicting the statements of the witness, Overturf, we will reverse the judgment and remand the cause. All concur.